**12-Person Jury**

Return Date: No return date scheduled
Hearing Date: 10/13/2020 9:30 AM - 9:30 AM
Courtroom Number: 2305
Location: District 1 Court
    Cook County, IL

FILED
6/12/2020 5:51 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2020CH04554

FILED DATE: 6/12/2020 5:51 PM   2020CH04554

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

FREDY SOSA, individually and on behalf of
all others similarly situated,

      *Plaintiff,*

    v.

ONFIDO, INC., a Delaware corporation,

      *Defendant.*

Case No.:

**2020CH04554**

9474043

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Fredy Sosa brings this Class Action Complaint and Demand for Jury Trial against Defendant Onfido, Inc. to put a stop to its unlawful collection, use, and storage of Plaintiff's and putative Class members' sensitive biometric data. Plaintiff, for this Class Action Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences and, as to all other matters, upon information and belief.

### NATURE OF THE ACTION

1.    Defendant Onfido markets and sells biometric software that purports to help businesses identify and register consumers.

2.    Onfido's software is becoming increasingly popular in the digital era, as online business often requires consumers to establish their identities by submitting photographs of their driver's licenses or identification cards along with photographs of their faces. Onfido developed proprietary facial recognition software that can be used to scan those uploaded photographs, locate consumers' faces, extract unique biometric identifiers associated with the consumers' faces, and determine whether the photographs match uploaded identification cards, other photos in its database, the biometric data of known masks, or in some instances, on information and

belief, third party and government databases.

3.      Business can integrate Onfido's software into their own websites so that they can establish a consumer's identity—for example, during a sign up or registration process—without having to send the consumer to another location or webpage. In other words, Onfido's software is designed to be embedded into a business's website in such a way that that consumers will likely be entirely unaware they are interacting with and providing their sensitive information to an unknown, third-party company, Onfido.

4.      Utilizing biometric identification software exposes consumers to serious and irreversible privacy risks, especially here where it is not clear to consumers that Onfido is collecting their biometric identifiers.

5.      Recognizing the need to protect its citizens from situations like these, Illinois enacted the Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* ("BIPA"), specifically to regulate companies that collect and store Illinois citizens' biometrics.

6.      Despite this law, Onfido disregards consumers' statutorily protected privacy rights and unlawfully collects, stores, and uses, their biometric data in violation of the BIPA. Specifically, Onfido has violated (and continues to violate) the BIPA because it did not:

- Properly inform Plaintiff and the Class members in writing of the specific purpose and length of time for which their biometric data were being collected, stored, and used, as required by the BIPA;

- Provide and make known to Plaintiff and the Class members a publicly available retention schedule and guidelines for permanently destroying Plaintiff's and the Class's biometric data, as required by the BIPA; nor

- Receive a written release from Plaintiff or the members of the Class to collect, capture, or otherwise obtain their biometric data, as required by the BIPA.

7.      Accordingly, this Complaint seeks an Order: (i) declaring that Defendant's conduct violates the BIPA; (ii) requiring Defendant to cease the unlawful activities discussed

2

FILED DATE: 6/12/2020 5:51 PM   2020CH04554

herein; and (iii) awarding damages to Plaintiff and the proposed Class.

<div style="text-align:left; writing-mode: vertical">FILED DATE: 6/12/2020 5:51 PM 2020CH04554</div>

## PARTIES

8.      Plaintiff Fredy Sosa is a natural person and citizen of the State of Illinois and Cook County.

9.      Defendant Onfido, Inc. is a Delaware corporation existing under the laws of the State of Delaware with its principal place of business located at 3 Finsbury Avenue, London EC2M 2PA. Onfido does business in this County, the State of Illinois, and across the country.

## JURISDICTION AND VENUE

10.      This Court has jurisdiction over Defendant pursuant to 735 ILCS 5/2-209 because Defendant conducts business transactions in Illinois and has committed tortious acts in Illinois. Defendant has hired or sought to hire individuals to work in the State of Illinois to market and distribute its biometric identification software. On information and belief, Defendant has contracted with Illinois-based businesses to provide its biometric identification software with the intention and purpose that it would be used to collect biometric data from Illinois residents. Defendant is and has been aware that it is collecting biometric data from Illinois residents, without complying with BIPA, throughout the class period. Additionally, this Court has jurisdiction over Plaintiff because he is a resident of the State of Illinois.

11.      Venue is proper in Cook County because Defendant is a nonresident of Illinois, and the conduct that give rise to this action occurred in Cook County.

## FACTUAL BACKGROUND

**I.      The Biometric Information Privacy Act.**

12.      In the early 2000s, major national corporations started using Chicago and other locations in Illinois to test "new [consumer] applications of biometric-facilitated financial

FILED DATE: 6/12/2020 5:51 PM   2020CH04554

transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias." 740 ILCS 14/5(b). Given its relative infancy, an overwhelming portion of the public became weary of this then-growing, yet unregulated, technology. *See* 740 ILCS 14/5.

13.     In late 2007, a biometrics company called Pay By Touch—which provided major retailers throughout the State of Illinois with fingerprint scanners to facilitate consumer transactions—filed for bankruptcy. That bankruptcy was alarming to the Illinois Legislature because suddenly there was a serious risk that millions of fingerprint records—which, are unique biometric identifiers, can be linked to people's sensitive financial and personal data—could now be sold, distributed, or otherwise shared through the bankruptcy proceedings without adequate protections for Illinois citizens. The bankruptcy also highlighted the fact that most consumers who had used that company's biometric scanners were completely unaware that the scanners were not actually transmitting data to the retailer who deployed the scanner, but rather to the now-bankrupt company, and that their unique biometric identifiers could now be sold to unknown third parties.

14.     Recognizing the "very serious need [for] protections for the citizens of Illinois when it [came to their] biometric information," Illinois enacted the BIPA in 2008. *See* Illinois House Transcript, 2008 Reg. Sess. No. 276; 740 ILCS 14/5.

15.     The BIPA is an informed consent statute which achieves its goal by making it unlawful for a company to, among other things, "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless it *first*:

> (1) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored;
>
> (2) informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected,

FILED DATE: 6/12/2020 5:51 PM   2020CH04554

stored, and used; and

> (3) receives a written release executed by the subject of the biometric identifier or biometric information."

740 ILCS 14/15(b).

16.     Biometric identifiers include retina and iris scans, voiceprints, scans of hand and fingerprints, and—most importantly here—face geometry. *See* 740 ILCS 14/10. Biometric information is separately defined to include any information based on an individual's biometric identifier that is used to identify an individual. *See id.*

17.     The BIPA also establishes standards for how companies in possession of biometric identifiers and biometric information must handle them. *See* 740 ILCS 14/15(c)–(d). For instance, the BIPA requires companies to develop and comply with a written policy—made available to the public—establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting such identifiers or information has been satisfied or within three years of the individual's last interaction with the company, whichever occurs first. 740 ILCS 14/15(a).

18.     Ultimately, the BIPA is simply an informed consent statute. Its narrowly tailored provisions place no absolute bar on the collection, sending, transmitting or communicating of biometric data. For example, the BIPA does not limit what kinds of biometric data may be collected, sent, transmitted, or stored. Nor does the BIPA limit to whom biometric data may be collected, sent, transmitted, or stored. The BIPA simply mandates that entities wishing to engage in that conduct must make proper disclosures and implement certain reasonable safeguards.

## II.     Onfido Violates the Biometric Information Privacy Act.

19.     By the time the BIPA passed through the Illinois Legislature in mid-2008, many companies who had experimented with using biometric data as an authentication method stopped

FILED DATE: 6/12/2020 5:51 PM    2020CH04554

doing so, at least for a time. That is because Pay By Touch's bankruptcy, described in Section I above, was widely publicized and brought attention to consumers' discomfort with the use of their biometric data.

20.    Unfortunately, Onfido failed to address these concerns and it continues to collect, store, and use consumers' biometric data in violation of the BIPA by using facial recognition technology.

21.    Onfido provides biometric identification software intended to be seamlessly incorporated into its customers' products and mobile apps, without clear notice to consumers that Onfido is even involved in the process (or how it is involved). According to Onfido's representations to businesses, "[i]dentity verification technology helps establish the legitimate online identity of the people accessing your product or service." Onfido claims that use of its software will "create trust and integrity" in its customer's online communities, and, for businesses first requiring user identification, Onfido's software will "make onboarding a breeze."[1] Indeed, various businesses have partnered with Onfido for this purpose.

22.    A consumer establishing his or her identity through Onfido must upload a copy of his or her identification (such as a driver's license, state identification, or a passport) and a photo of his or her face.

23.    Onfido uses biometric facial recognition to establish consumers' identities. According to Onfido, "we take a new approach to identity—combining a person's ID with their physical biometrics … Using advanced facial scanning, Onfido then compares their facial biometrics to the photo on the ID, and generates a score based on the similarity of the faces."[2]

---

[1]    *Identity verification | Onfido*, https://onfido.com/use-cases/identity-verification (last visited June 12, 2020).

[2]    *Onfido | Biometric Verification*, https://onfido.com/solutions/biometric-verification (last visited June 12, 2020).

FILED DATE: 6/12/2020 5:51 PM    2020CH04554

24.     Onfido states that its biometric software "extract[s] and compare[s] numerical biometric data from facial images to understand whether two faces are likely to be a match."[3]

25.     Onfido also checks whether uploaded facial images show signs of fraud by, for example, comparing a person's numerical biometric data to the biometric data of known masks.

26.     Consumers establishing their identities through a mobile app or a website using Onfido's identity software are not made aware that the process relies on biometric technology rather than, for example, a real person conducting the identification process or any other confirmation method.

27.     What's worse, Onfido has also created numerous, potentially massive databases of biometric identifiers obtained from consumers. Onfido calls these databases "Known Faces." The Known Faces database allows Onfido's customers to compare a consumer's identity against an individual already in its database and flag consumers who have already been identified:

> The Known Faces report compares a specific applicant's likeness in their most recent live photo to live photos from all applicants in your Onfido account database. It alerts you to faces which have already been through your identity verification flow, so you can catch repeat identity fraud attempts, and help confused users who may have forgotten they already registered with you to recover their accounts.[4]

28.     As such, the biometric templates obtained by Onfido may be compared against hundreds or even thousands of other templates as part of the identification process.

29.     Although Onfido is well aware of Illinois consumers' privacy rights under BIPA—stating on its website that "[c]onsent and transparency must be paramount concerns"[5]

---

[3]     *Driver registration, verification and onboarding | Onfido*, https://onfido.com/privacy/ (last visited June 12, 2020).
[4]     *Onfido | Identity Verification | Documentation*, https://documentation.onfido.com/#known-faces-report-beta (last visited June 12, 2020).
[5]     *Navigating AI regulations as a fraud expert*, https://onfido.com/resources/blog/navigating-ai-regulations-as-a-fraud-expert (last visited June 12, 2020).

FILED DATE: 6/12/2020 5:51 PM 2020CH04554

when collecting consumers' biometric identifiers—it failed to inform consumers of the complete purposes for which it collects their sensitive biometric data or to whom the data is disclosed, if at all.

30.     Onfido similarly failed to provide consumers with a written, publicly available policy identifying its retention schedule, and guidelines for permanently destroying consumers' facial geometries when the initial purpose for collecting or obtaining their facial geometries is no longer relevant, as required by the BIPA. A consumer who established his or her identity through Onfido does so without any knowledge of when his or her biometric identifiers will be removed from Onfido's databases—or if they ever will be.

31.     The Pay By Touch bankruptcy that catalyzed the passage of the BIPA highlights why conduct such as Onfido's—where the consumers upload their photos but are not aware of the full extent of the reasons they are doing so, nor are they informed who else is receiving this data—is so dangerous. That bankruptcy spurred Illinois citizens and legislators to reach a critical conclusion: it is crucial for people to understand that (1) they are providing biometric data in the first place; (2) who exactly is collecting it; (3) who it will be transmitted to; (4) for what purposes; and (5) for how long it will be kept. But Onfido disregards these obligations, and instead unlawfully collects, stores, and uses consumer's biometric identifiers and information without proper consent.

32.     Ultimately, Onfido's conduct disregards consumers' statutorily protected privacy rights in violation of the BIPA.

### FACTS SPECIFIC TO PLAINTIFF SOSA

33.     Plaintiff Fredy Sosa is a member of an online marketplace where consumers buy and sell goods. In order to increase one's reputation and trustworthiness in the online

FILED DATE: 6/12/2020 5:51 PM   2020CH04554

marketplace, consumers are strongly encouraged to register their identities.

34.    For this purpose, the online marketplace partnered up with Onfido to establish its users' identities.

35.    On or around April 2020, Plaintiff Sosa established his identity through the online marketplace's mobile application by uploading a photograph of his driver's license and a photograph of his face. Onfido subsequently used biometric identification technology to extract his biometric identifiers and compare the two photographs.

36.    Onfido did not inform Plaintiff Sosa that it would collect, store, or use his biometric identifiers derived from his face. In fact, there was almost no notice whatsoever that Onfido is even involved in the process.

37.    In addition, Onfido never informed Plaintiff Sosa of any biometric data retention policy it developed, nor whether it will ever permanently delete the biometric identifiers derived from his face.

38.    Plaintiff Sosa never signed a written release allowing Onfido to collect, use, or store his biometric identifiers derived from his face.

39.    Plaintiff Sosa has, therefore, been exposed to the risks and harmful conditions created by Onfido's violations of the BIPA alleged herein.

40.    Plaintiff Sosa seeks damages under BIPA as compensation for the injuries Onfido has caused.

## CLASS ALLEGATIONS

41.    **Class Definition**: Plaintiff Fredy Sosa brings this action pursuant to 735 ILCS 5/2-801 on behalf of himself and a Class of similarly situated individuals, defined as follows:

All residents of the State of Illinois who had their biometric identifiers or biometric information, including faceprints, collected, captured, received, otherwise obtained, or

FILED DATE: 6/12/2020 5:51 PM 2020CH04554

disclosed by Onfido while residing in Illinois.

The following people are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and its current or former officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

42.     **Numerosity**: The exact number of Class members is unknown to Plaintiff at this time, but it is clear that individual joinder is impracticable. Defendant has collected, captured, received, or otherwise obtained biometric identifiers or biometric information from at least hundreds of consumers who fall into the definition of the Class. Ultimately, the Class members will be easily identified through Defendant's records.

43.     **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

   a)  whether Defendant collected, captured, or otherwise obtained Plaintiff's and the Class's biometric identifiers or biometric information;

   b)  whether Defendant properly informed Plaintiff and the Class of its purposes for collecting, using, and storing their biometric identifiers or biometric information;

   c)  whether Defendant obtained a written release (as defined in 740 ILCS 14/10) to collect, use, and store Plaintiff's and the Class's biometric identifiers or biometric information;

   d)  whether Defendant has sold, leased, traded, or otherwise profited from

10

FILED DATE: 6/12/2020 5:51 PM   2020CH04554

Plaintiff's and the Class's biometric identifiers or biometric information;

e)  whether Defendant developed a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within three years of their last interaction, whichever occurs first;

f)  whether Defendant complies with any such written policy (if one exists); and

g)  whether Defendant used Plaintiff's and the Class's faceprints or facial geometry to identify them.

44.     **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class and has retained counsel competent and experienced in complex litigation and class actions. Plaintiff has no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and have the financial resources to do so. Neither Plaintiff nor his counsel have any interest adverse to those of the other members of the Class.

45.     **Appropriateness**: This class action is appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Class is impracticable. The damages suffered by the individual members of the Class are likely to have been small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's wrongful conduct. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct. Even if members of the Class could sustain such individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in their Complaint. By contrast, a class action presents far fewer

11

management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

<div style="text-align:center">

**CAUSE OF ACTION**
**Violation of 740 ILCS 14/1, *et seq.***
**(On Behalf of Plaintiff and the Class)**

</div>

46.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

47.     The BIPA requires companies to obtain informed written consent from individuals before acquiring their biometric data. Specifically, the BIPA makes it unlawful for any private entity to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless [the entity] first: (1) informs the subject ... in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject ... in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; *and* (3) receives a written release executed by the subject of the biometric identifier or biometric information...." 740 ILCS 14/15(b) (emphasis added).

48.     The BIPA also mandates that companies in possession of biometric data establish and maintain a satisfactory biometric data retention (and—importantly—deletion) policy. Specifically, those companies must: (i) make publicly available a written policy establishing a retention schedule and guidelines for permanent deletion of biometric data (*i.e.*, when the business relationship ends); and (ii) actually adhere to that retention schedule and actually delete the biometric information. *See* 740 ILCS 14/15(a).

49.     Unfortunately, Onfido fails to comply with these BIPA mandates.

50.     Defendant is corporation and thus qualifies as a "private entity" under the BIPA.

<div style="text-align:center">12</div>

FILED DATE: 6/12/2020 5:51 PM    2020CH04554

FILED DATE: 6/12/2020 5:51 PM   2020CH04554

*See* 740 ILCS 14/10.

51. Plaintiff and the Class are individuals who had their "biometric identifiers" collected by Onfido (in the form of their facial scans), as explained in detail in Section II. *See* 740 ILCS 14/10.

52. Plaintiff's and the Class's biometric identifiers or information based on those biometric identifiers were used to identify them, constituting "biometric information" as defined by the BIPA. *See* 740 ILCS 14/10.

53. Onfido violated 740 ILCS 14/15(b)(3) by failing to obtain written releases from Plaintiff and the Class before it collected, used, and stored their biometric identifiers and biometric information.

54. Onfido violated 740 ILCS 14/15(b)(1) by failing to inform Plaintiff and the Class in writing that their biometric identifiers and biometric information were being collected and stored.

55. Onfido violated 740 ILCS 14/15(b)(2) by failing to inform Plaintiff and the Class in writing of the specific purpose and length of term for which their biometric identifiers or biometric information was being collected, stored, and used.

56. Onfido violated 740 ILCS 14/15(a) by failing to publicly provide a retention schedule or guideline for permanently destroying consumers' biometric identifiers and biometric information.

57. By collecting, storing, and using Plaintiff's and the Class's biometric identifiers and biometric information as described herein, Onfido violated Plaintiff's and the Class's rights to privacy in their biometric identifiers or biometric information as set forth in the BIPA, 740 ILCS 14/1, *et seq*.

FILED DATE: 6/12/2020 5:51 PM   2020CH04554

58.     On behalf of himself and the Class, Plaintiff Fredy Sosa seeks: (1) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring Defendant to comply with the BIPA's requirements for the collection, storage, and use of biometric identifiers and biometric information as described herein; (2) liquidated damages of $5,000 for each willful and/or reckless violation of the BIPA pursuant to 740 ILCS 14/20(2) or, in the alternative, liquidated damages of $1,000 for each negligent violation of the BIPA pursuant to 740 ILCS 14/20(1); and (3) reasonable attorneys' fees, costs, and expenses pursuant to 740 ILCS 14/20(3).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Fredy Sosa, on behalf of himself and the Class, respectfully requests that the Court enter an Order:

A.     Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff Fredy Sosa as a representative of the Class, and appointing his counsel as Class Counsel;

B.     Declaring that Defendant's actions, as set out above, violate the BIPA;

C.     Awarding statutory damages of $5,000 for *each* willful and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) or, in the alternative, statutory damages of $1,000 for *each* negligent violation of BIPA pursuant to 740 ILCS 14/20(1);

D.     Awarding injunctive and other equitable relief as is necessary to protect the interests of the Class, including an Order requiring Defendant to collect, store, and use biometric identifiers or biometric information in compliance with the BIPA;

E.     Awarding Plaintiff and the Class their reasonable litigation expenses and attorneys' fees;

FILED DATE: 6/12/2020 5:51 PM   2020CH04554

F.      Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent allowable; and

G.      Awarding such other and further relief as equity and justice may require.

**JURY TRIAL**

Plaintiff Fredy Sosa demands a trial by jury for all issues so triable.

Respectfully submitted,

**FREDY SOSA**, individually and on behalf of all others similarly situated,

Dated: June 12, 2020

By: /s/ /s/Benjamin H. Richman
        One of Plaintiff's Attorneys

Benjamin H. Richman
brichman@edelson.com
J. Eli Wade-Scott
ewadescott@edelson.com
EDELSON PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378
Firm ID: 62075