**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| FREDY SOSA, individually and on behalf of all others similarly situated, | |
| *Plaintiff,* | Case No.: 20-cv-04247 |
| v. | Honorable Marvin E. Aspen |
| ONFIDO, INC., a Delaware corporation, | |
| *Defendant.* | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION
TO STAY AND COMPEL INDIVIDUAL ARBITRATION**

**INTRODUCTION**

Defendant Onfido, Inc., faces an insurmountable hurdle to compelling Plaintiff Fredy Sosa to arbitrate this dispute: there is no arbitration agreement between them. Lacking such an agreement, Onfido instead seeks to enforce an arbitration clause contained in the Terms of Service of OfferUp, an online marketplace app used by Mr. Sosa and to which Onfido provided identity-verification services. But Onfido is not a party to the OfferUp Terms of Service, and, for the most part, agreements can't be enforced by non-signatories.

In its Motion to Stay and Compel Individual Arbitration, Onfido offers three theories why it should be exempt from the general rule and allowed to enforce an arbitration clause in someone else's agreement: third-party beneficiary, equitable estoppel, and agency. None of these exceptions apply here, however. Onfido is not an intended third-party beneficiary of the OfferUp Terms of Service (which, among other things, expressly disclaim the creation of any third-party rights), Mr. Sosa engaged in no conduct on which Onfido relied to its detriment such that he is equitably estopped from disputing Onfido's ability to enforce the OfferUp arbitration clause, and

Onfido presents no evidence that it was OfferUp's agent such that it can invoke OfferUp's arbitration agreement. For these reasons—as well as the fact that Onfido seeks improper relief in the form of an order compelling out-of-district arbitration—Onfido's motion should be denied.

## BACKGROUND

Mr. Sosa filed suit against Onfido in Illinois state court under the Biometric Information Privacy Act, 740 ILCS 14/1 *et seq*. (Dkt. 1-1.) He alleges that in the course of providing identity-verification services to OfferUp, Onfido collected his biometric data—specifically, his facial geometry or information based on it—without his consent in violation of the statute. (*Id.* ¶¶ 33-40.) Onfido removed the suit to this Court and now moves to compel arbitration. It is undisputed, however, that no contract exists between Mr. Sosa and Onfido. Consequently, Onfido seeks to enforce an arbitration clause in the OfferUp Terms of Service.

As Onfido acknowledges, it is not a party to those terms. (Dkt. 21 at 9.) Furthermore, the OfferUp Terms of Service—including the arbitration clause—make clear that they apply only to the parties to those terms: OfferUp and its users. The terms begin by notifying users that "these terms include a mandatory arbitration provision and class action waiver provision, which affect your rights about how to resolve any dispute *with OfferUp, Inc.*" (Dkt. 23 at 13, 44, 65, 96, 126) (emphasis added). Likewise, the arbitration provision begins by noting that it requires users to arbitrate all disputes "with OfferUp," and that it limits the manner in which users can seek relief "from OfferUp." (*Id.* at 35, 58, 87-88, 118-19, 148-49). It then goes on to make clear—repeatedly—that it is an agreement solely between users "and OfferUp." (*Id.* at 36, 58, 88, 119, 149) ("*[Y]ou and OfferUp* agree to arbitrate Disputes through binding arbitration[.]") (emphasis added); (*id.* at 36, 59, 88, 119, 149) ("*You and OfferUp* agree that any Dispute … will be resolved solely through individual arbitration[.]") (emphasis added); (*id.* at 36, 59, 88-89, 120,

150) ("*You and OfferUp* agree that these Terms … shall be … governed by … the Federal Arbitration Act") (emphasis added); (*id.* at 36, 59, 89, 120, 150) ("*You and OfferUp* agree that each party will notify the other party in writing of any arbitrable or small claims Dispute[.]") (emphasis added); (*id.* at 37, 59, 89-90, 121, 151) ("*[Y]ou and OfferUp* agree that … any arbitration will occur in King County, Washington, [and] … will be conducted confidentially by a single arbitrator[.]") (emphasis added). The Terms of Service define "OfferUp" solely as including "OfferUp, Inc." (*Id.* 23 at 13, 44, 65, 96, 126.) "OfferUp" does not include any affiliates or licensors, which are separately defined as "OfferUp Providers." (*Id.* 23 at 31, 55-56, 84, 115, 145.)

The OfferUp Terms of Service also expressly disclaim the creation of any enforceable rights in third parties, explicitly stating that "[t]hese Terms do not create any private right of action on the part of any third party." (*Id.* at 25, 52, 77, 108, 138). Though this disclaimer appears in Section 7 of the Terms of Service ("Acceptable Use"), the word "Terms" is defined in the opening paragraph of the Terms of Service as "all terms described herein and all terms incorporated by reference." (*Id.* at 23 at 13, 44, 65, 96, 126.)

Finally, while Onfido asserts that it was an agent of OfferUp, there is no evidence in the record providing any details about their relationship. Mr. Sosa's complaint alleges generally that OfferUp "partnered up with Onfido to establish its users' identities" (dkt. 1-1 ¶ 34), and the OfferUp Terms of Service reference the TruYou identity-verification service (dkt. 23 at 18-19, 48, 71-72, 102-03, 132-33).[1] The OfferUp Terms of Service go on to state that "OfferUp does

---

[1]    The complaint doesn't mention OfferUp by name, because the case is not against OfferUp—it's described as an "online marketplace." (Dkt. 1-1 ¶¶ 33-35.) Mr. Sosa does not dispute that the online marketplace to which the complaint refers is OfferUp. Likewise, while the OfferUp Terms of Service do not name the provider of the TruYou identity-verification service, Mr. Sosa agrees that it is provided by Onfido.

not control, endorse or adopt any Third-Party Content and … OfferUp will have no responsibility for any Third Party Content," where "Third-Party Content" is defined as including "services provided by third parties." (Dkt. 23 at 26-27, 53, 79, 110-11, 140.) Other than that, there is no information in the record regarding the relationship between Onfido and OfferUp. In fact, when asked, both Onfido and OfferUp declined to provide Plaintiff's counsel with a copy of any agreement between them, and Onfido refused to provide any additional information about their relationship at all. (Declaration of J. Eli Wade-Scott ("Wade-Scott Decl.") ¶ 2, attached hereto as Exhibit 1.)

**ARGUMENT**

## I.    THE MOTION TO COMPEL ARBITRATION IS IMPROPER.

Before turning to the merits of Onfido's motion, there is a remedies problem to address: Onfido is seeking relief this Court can't grant. Section E of the arbitration clause that Onfido wants to enforce states that "any arbitration will occur in King County, Washington." (Dkt. 23 at 37, 59, 89-90, 121, 151.) But as the Seventh Circuit has explained, "where [an] arbitration agreement contains a forum selection clause, only the district court *in that forum* can issue a § 4 order compelling arbitration." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lauer*, 49 F.3d 323, 327 (7th Cir. 1995). Thus, when faced with a motion to compel arbitration outside its district, a court should instead treat the motion as one for dismissal under Rule 12(b)(3) for improper venue. *See, e.g.*, *In re Dealer Mgmt. Sys. Antitrust Litig.*, No. 18-cv-864, 2020 WL 832365, at *6 (N.D. Ill. Feb. 20, 2020); *Nandorf, Inc. v. Applied Underwriters Captive Risk Assurance Co.*, 410 F. Supp. 3d 882, 887 (N.D. Ill. 2019); *Cont'l Cas. Co. v. Am. Nat. Ins. Co.*, 417 F.3d 727, 732-33 (7th Cir. 2005) (stating that such an approach "makes eminent sense"). The Court should do so here.

Regardless, re-casting the motion as one for improper venue does not change the ultimate outcome: the motion should be denied. As explained below, this dispute is not subject to arbitration because Onfido—a non-signatory to the OfferUp Terms of Service—has no right to enforce an arbitration clause in a contract between OfferUp and its users. Thus, whether treated as a motion to compel arbitration or a motion to dismiss for improper venue, Onfido's motion should be denied.

## II. ONFIDO—A NON-SIGNATORY—CANNOT ENFORCE THE ARBITRATION CLAUSE IN THE OFFERUP TERMS OF SERVICE.

Whether an arbitration agreement can be enforced by a non-signatory to that agreement is determined by state law. *Scheurer v. Fromm Family Foods LLC*, 863 F.3d 748, 752-53 (7th Cir. 2017). Here, the state whose law governs is Illinois.[2]

As a general matter, only signatories are entitled to enforce an arbitration agreement. *Ervin v. Nokia, Inc.*, 812 N.E.2d 534, 539 (Ill. App. Ct. 2004). That said, courts have recognized various contract-based theories under which a non-signatory may be able to enforce an arbitration agreement. *Id.* Onfido asserts three such theories in support of its attempt to enforce the OfferUp arbitration clause: third-party beneficiary, equitable estoppel, and agency. Here, however, none of those exceptions to the general rule of non-signatory unenforceability apply.

---

[2]     Onfido cites both Washington and Illinois law in its brief but identifies no substantive difference between the two. (Dkt. 21 at 5-6.) For that reason alone, Illinois law applies. *See Gould v. Artisoft, Inc.*, 1 F.3d 544, 549 n.7 (7th Cir. 1993) ("Where the parties have not identified a conflict between the two bodies of state law that might apply to their dispute, we will apply the law of the forum state—here, Illinois."). In any event, the only potential basis for applying Washington law identified by Onfido (a Delaware corporation headquartered in California (dkt. 1 at 3)) is a Washington choice-of-law clause in the OfferUp Terms of Service. (Dkt. 21 at 5.) But as a non-signatory seeking to enforce those terms, Onfido cannot assert the terms' choice of law clause. *Nucap Indus., Inc. v. Robert Bosch LLC*, 273 F. Supp. 3d 986, 1006 (N.D. Ill. 2017) ("Applying [the contract's] choice-of-law provision would assume the answer to the antecedent question of contract formation at issue (i.e. beg the question).").

**A.      Onfido is not a third-party beneficiary of the OfferUp Arbitration Clause.**

Illinois recognizes two types of third-party beneficiaries—intended and incidental. *Cont'l Cas. Co.*, 417 F.3d at 734. Only an intended beneficiary has enforceable rights under the contract. *Id. See also Thomas v. UBS AG*, 706 F.3d 846, 852 (7th Cir. 2013) ("A third-party beneficiary is someone whom the contracting parties wanted to have the right to enforce the contract.") (emphasis omitted). "Illinois law, however, strongly disfavors finding that a third-party beneficiary relationship exists absent express language creating one." *Word v. City of Chicago*, 946 F.3d 391, 397 (7th Cir. 2020). Here, no such language exists.

As noted above, the arbitration provision in the OfferUp Terms of Service expressly states that it is an agreement between "[a user] and OfferUp," with "OfferUp" being defined as including only OfferUp, Inc. There is nothing in the arbitration provision—let alone the required "express language"—extending its coverage to anyone besides OfferUp and its users. This alone defeats Onfido's claim to be an intended third-party beneficiary entitled to enforce the arbitration clause. *See Ervin*, 812 N.E.2d at 541 ("If AT&T intended that Nokia would be a third-party beneficiary of the [wireless service agreement with AT&T customers], it could have included Nokia in the [agreement.]"); *cf. Manor v. Copart Inc.*, No. 17-cv-2585, 2017 WL 4785924, at *4 (N.D. Ill. Oct. 24, 2017) (allowing non-signatory subsidiary to enforce arbitration agreement between plaintiff and "Company" where agreement expressly defined "Company" as including subsidiaries).

Furthermore, not only does the arbitration provision fail to mention any intended third-party beneficiaries, the OfferUp Terms of Service expressly *disclaim* the creation of any enforceable rights in third parties. (Dkt. 23 at 25, 52, 77, 108, 138) ("These Terms do not create any private right of action on the part of any third party[.]"). This, too, is enough to defeat

Onfido's claim to third-party beneficiary status. *See Barry v. St. Mary's Hosp. Decatur*, 68 N.E.3d 964, 976 (Ill. App. Ct. 2016) (finding non-signatory not to be a third-party beneficiary where the contract specified that, except for a single identified third-party beneficiary, "nothing contained here will be construed as, or be deemed to create, any rights or remedies in any party other than [the parties to the contract]").

Onfido points to various sections of the Terms of Service (notably *not* the arbitration provision) in its bid to establish itself as a third-party beneficiary, but none of those provisions create any enforceable rights in Onfido. Sections 4 and 8, discussing a user's obligations with respect to using the TruYou feature and posting content on OfferUp, provide—at best—only incidental benefits to Onfido. *See Martis v. Grinnell Mut. Reinsurance Co.*, 905 N.E.2d 920, 924 (Ill. App. Ct. 2009) ("It must appear from the language of the contract that the contract was made for the direct, not merely incidental, benefit of the third person."). Nowhere is any entity but OfferUp mentioned in those provisions. And to the extent sections 16 (disclaimer of warranties), 18 (limitation of liability), and 19 (indemnification) provide direct third-party benefits to anyone—contrary to the Terms' express disclaimer of third-party rights—it is not to Onfido. Onfido relies on those sections' use of the defined term "OfferUp Providers," which is defined to include OfferUp's "affiliates." (Dkt. 23 at 31, 55-56, 84, 115, 145.) But Onfido's unsupported assertion to the contrary notwithstanding, Onfido offers no evidence that it is an affiliate of OfferUp—i.e., "[a] corporation that is related to another corporation by shareholdings or other means of control; a subsidiary, parent, or sibling corporation." Affiliate, Black's Law Dictionary (11th ed. 2019).

In any case, even if the sections to which Onfido points did make Onfido an intended third-party beneficiary, those sections are not the arbitration clause. To the extent any of those

*other* sections of the OfferUp Terms of Service grant enforceable third-party rights to Onfido, they do not grant Onfido the right to enforce the arbitration clause. *See Estate of Willis v. Kiferbaum Const. Corp.*, 830 N.E.2d 636, 643 (Ill. App. Ct. 2005) (a third party has no enforceable rights under a contract "*unless the agreed-to provision* was intentionally included for the direct benefit of the third party") (emphasis added). Indeed, aside from the fact (discussed above) that the arbitration clause is expressly limited to OfferUp and its users, that clause doesn't even make sense as applied to third parties. For example, the arbitration clause provides that written notice of an arbitrable dispute must be given to the other side and specifies where and how such notice must be sent: Notice to OfferUp must be sent by certified mail or courier to "OfferUp Designated Agent" in Bellevue, Washington, and notice to a user must be sent to the email address that the user used to register their OfferUp account. (Dkt. 23 at 36-37, 59, 89, 120, 150.) The arbitration clause does not specify where or how required notice is to be sent to any third parties who have enforceable arbitration rights under that provision. If the parties intended to give third parties like Onfido enforceable rights under this provision, it seems odd (to say the least) that the parties would not also specify where and how required notice was to be sent as to such third parties—information they deemed important enough to spell out as to themselves.

"Illinois law holds a strong presumption against creating contractual rights in third parties, and this presumption can only be overcome by a showing that the language and circumstances of the contract manifest an affirmative intent by the parties to benefit the third party." *Willis*, 830 N.E.2d at 642-43. Onfido has failed to make that showing here.

### B.     Equitable estoppel does not apply.

Onfido's appeal to equitable estoppel is similarly unavailing. "In Illinois, 'a claim of equitable estoppel exists where a person, by his or her statements or conduct, induces a second

person to rely, to his or her detriment, on the statements or conduct of the first person.'" *Warciak v. Subway Rests., Inc.*, 880 F.3d 870, 872 (7th Cir. 2018) (quoting *Ervin*, 812 N.E.2d at 541). This detrimental reliance must be shown "by clear, concise, and unequivocal evidence." *Ervin*, 812 N.E.2d at 541 (internal quotations omitted).

Here, Onfido fails to explain—let alone provide clear, concise, and unequivocal evidence of—what statements or conduct of Mr. Sosa it relied on, what action it took in reliance on any such statements or conduct, how any such reliance was reasonable, or what detriment it suffered in doing so. Even assuming he agreed to the OfferUp Terms of Service when creating an account or logging in to OfferUp, *see Sgouros v. TransUnion Corp.*, 817 F.3d 1029 (7th Cir. 2016) (clicking an "I accept" button under an online service agreement during a sign-up process did not manifest consumer's assent to terms), Mr. Sosa took no action at all with respect to Onfido. He did exactly what the plaintiff did in *Ervin* with respect to a non-signatory seeking to enforce an arbitration clause: nothing. *Ervin*, 812 N.E.2d at 541 ("When [plaintiff] entered into [a contract containing an arbitration clause] with AT&T for cell phone service in July of 2000, he took no action from which [non-signatory defendant] could have reasonably relied on to its detriment that [plaintiff] had agreed to arbitrate any claim he had against [non-signatory defendant]."). And as the Illinois Supreme Court has explained, "[w]ithout the misrepresentation or concealment of a material fact, equitable estoppel does not apply." *Parks v. Kownacki*, 737 N.E.2d 287, 296 (Ill. 2000). *See also Geddes v. Mill Creek Country Club, Inc.*, 751 N.E.2d 1150, 1157 (Ill. 2001) (setting out the elements of equitable estoppel).

Ignoring the elements established by the Illinois Supreme Court, Onfido instead argues that equitable estoppel applies whenever a plaintiff "raises allegations of substantially interdependent and concerted misconduct by both the non-signatory and one or more of the

9

signatories to the contract." (Dkt. 21 at 13) (quoting *Paragon Micro, Inc. v. Bundy*, 22 F. Supp. 3d 880, 889-90 (N.D. Ill. 2014)). But this "interdependent and concerted misconduct" test is not the law in Illinois; it is federal common law that has its genesis in a 1999 Eleventh Circuit case. *See Paragon Micro*, 22 F. Supp. 3d at 889-90 (citing *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942 (11th Cir. 1999)). Illinois courts have expressly and repeatedly rejected this *MS Dealer*-derived test. *See Ervin*, 812 N.E.2d at 541-42 (declining to adopt *MS Dealer* standard for equitable estoppel); *Peach v. CIM Ins. Corp.*, 816 N.E.2d 668, 673-74 (Ill. App. Ct. 2004) (same); *Guar. Trust Life Ins. Co. v. Platinum Supplemental Ins., Inc.*, 68 N.E.3d 481, 491-92 (Ill. App. Ct. 2016) (same).

Whether a non-signatory can enforce an arbitration agreement (including through equitable estoppel) is determined by state—not federal—law. *Scheurer*, 863 F.3d at 752-53; *CCC Info. Servs. Inc. v. Tractable Inc.*, No. 18 C 7246, 2019 WL 2011092, at *4 (N.D. Ill. May 7, 2019). Illinois law requires clear, concise, and unequivocal evidence of detrimental reliance on some misrepresentation or concealment of a material fact. Onfido has failed to provide any such evidence, and equitable estoppel therefore does not apply to allow non-signatory enforcement of the OfferUp Terms of Service.

### C. Onfido has failed to establish an agency relationship with OfferUp.

Finally, Onfido asserts that it can enforce the OfferUp arbitration clause because "[it] was acting as OfferUp's agent in connection with the TruYou feature." (Dkt. 21 at 13.) As an initial matter, Onfido's attempt to enforce the arbitration clause as OfferUp's agent appears to be expressly prohibited by the clause itself. (Dkt. 23 at 36, 59, 88, 119, 149) ("You and OfferUp agree that there will be no class arbitration *or arbitration in which an individual attempts to resolve a Dispute as a representative of another individual or group of individuals*.") (emphasis

added). In any case, Onfido's agency argument fails for a more fundamental reason: there's no evidence that Onfido was ever an agent of OfferUp.

"Agency is a consensual, fiduciary relationship between two legal entities created by law, where the principal has the right to control the activities of the agent, and the agent has the power to conduct legal transactions in the name of the principal." *Caligiuri v. First Colony Life Ins. Co.*, 742 N.E.2d 750, 756 (Ill. App. Ct. 2000). Thus, "[t]he test of agency is [1] whether the alleged principal has the right to control the manner and method in which work is carried out by the alleged agent and [2] whether the alleged agent can affect the legal relationships of the principal." *Chemtool, Inc. v. Lubrication Techs., Inc.*, 148 F.3d 742, 745 (7th Cir. 1998) (applying Illinois law). Both elements must be satisfied for there to be an agency relationship. *See, e.g.*, *Caligiuri*, 742 N.E.2d at 756-58 (finding no agency where, though there was evidence that alleged principal "would maintain full responsibility for the training, supervision and control" of alleged agent's employees, there was no evidence that alleged agent "had the ability to conduct legal transactions in the name of" alleged principal).

Here, Onfido doesn't assert—let alone present evidence of—either element. *See Sphere Drake Ins. Ltd. v. Am. Gen. Life Ins. Co.*, 376 F.3d 664, 672 (7th Cir. 2004) ("[T]he party alleging an agency relationship … bears the burden of proving its existence by a preponderance of the evidence."). Onfido doesn't claim that OfferUp had the right to control the manner and method in which Onfido provided identity-verification services to OfferUp, nor does it claim that it had the right to conduct transactions for or otherwise affect the legal relationships of OfferUp. Instead, Onfido simply points to three paragraphs in the complaint in which Mr. Sosa alleges that OfferUp "partnered" with Onfido to establish OfferUp users' identities. (Dkt. 21 at 13-14.) But contrary to Onfido's assertion, the fact that OfferUp engaged Onfido to provide identity-

verification services does not—without more—establish an agency relationship. *See, e.g.,*
*Chemtool*, 148 F.3d at 146-47 (an "agreement whereby [one company] performed certain
services on [another company's] behalf" did not create an agency relationship where "[second
company] did not exercise control over the manner in which [first company] provided its
services and … [first company] lacked authority to affect [second company's] legal relations").
In fact, the OfferUp Terms of Service expressly disclaim the kind of control over or
responsibility for third parties' provision of services that would be required to make those third
parties OfferUp's agents. (Dkt. 23 at 26-27, 53, 79, 110-11, 140) (stating that "OfferUp does not
control, endorse or adopt any Third-Party Content and … OfferUp will have no responsibility for
any Third Party Content," where "Third-Party Content" is defined as including "services
provided by third parties").

  Remarkably, when Plaintiff's counsel requested evidence that might establish or disprove
agency—the agreement between OfferUp and Onfido, or a declaration from Onfido establishing
agency—Onfido refused. (*See* Correspondence between J. Eli Wade-Scott and Joel Griswold,
Ex. 1-A.) Onfido has decided to do nothing but point to the allegations of the complaint, which
do not carry Onfido's burden to establish agency. Having failed to establish the existence of an
agency relationship, Onfido cannot enforce OfferUp's Terms of Service under an agency theory.

## CONCLUSION

  Because Onfido cannot enforce the arbitration clause in the OfferUp Terms of Service,
Defendant's Motion to Stay and Compel Arbitration should be denied.

Respectfully submitted,

**FREDY SOSA,** individually and on behalf of all others similarly situated,

Dated: November 17, 2020

By: /s/ J. Eli Wade-Scott

One of Plaintiff's attorneys

Benjamin H. Richman
brichman@edelson.com
J. Eli Wade-Scott
ewadescott@edelson.com
Schuyler Ufkes
sufkes@edelson.com
EDELSON PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370

13