UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FREDY SOSA, individually, and on behalf of all others similarly situated, ) ) ) Plaintiff, ) ) v. ) ) ONFIDO, INC., a Delaware corporation, ) ) Defendant. ) | No. 1:20 CV 04247 Hon. Marvin E. Aspen |

**MEMORANDUM OPINION & ORDER**

MARVIN E. ASPEN, District Judge:

Plaintiff Fredy Sosa ("Plaintiff") filed a putative class action lawsuit against Onfido, Inc. ("Defendant"), alleging that Defendant violated the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq* ("BIPA"). (Complaint ("Compl.") (Dkt. No. 1-1) ¶¶ 46–58.) Plaintiff's theory is that Defendant violated BIPA because Defendant collected and stored biometric information pertaining to Plaintiff and others without obtaining written releases and providing certain information, as required by statute. (Compl. ¶¶ 53–57.) Before us is Defendant's Motion to Stay and Compel Individual Arbitration. (Motion (Dkt. No. 20).) For the reasons set forth below, we deny the Motion.

**BACKGROUND**

Plaintiff filed this action in the Circuit Court of Cook County, Illinois Chancery Division on June 12, 2020. (Compl. at 1.) Defendant then removed the action to federal court on July 18, 2020, under 28 U.S.C. §§ 1332, 1441, 1446, and 1453. (Dkt. No. 1 at 1.)

Plaintiff is a member of online marketplace Offerup, Inc. ("OfferUp"). (Compl. ¶ 33; Plaintiff's Response to Defendant's Motion to Stay and Compel Individual Arbitration ("Resp.")

(Dkt. No. 26) at 3 n. 1.) OfferUp is an online marketplace where people can buy and sell goods. (Compl. ¶ 33.)

According to Defendant, when Plaintiff signed up for OfferUp, and each time that he logged into his account thereafter, he agreed to Offer's Terms of Service and Privacy Policy. (Defendant's Memorandum of Law in Support of Its Motion to Stay and Compel Individual Arbitration ("Memo") (Dkt. No. 21) at 2.) The Terms of Service contain an arbitration provision in Section 20. (*See* Memo at Ex. A–E.)

According to Plaintiff, OfferUp partnered with Defendant to establish users' identities. (Compl. ¶¶ 33–4.) On or around April 2020, Plaintiff established his identity on OfferUp by uploading photographs of his driver's license and face. (*Id*. ¶ 35.) Plaintiff claims that Defendant "subsequently used biometric identification technology to extract his biometric identifiers and compare the two photographs" without advising Plaintiff that it would "collect, use, or store his biometric identifiers derived from his face." (*Id*. ¶¶ 35–6.) Likewise, Plaintiff alleges that Defendant failed to provide him with a biometric data retention policy or to advise him of whether it will permanently delete the biometric identifiers that it derived from Plaintiff's face. (*Id*. ¶ 37.) Additionally, Plaintiff claims that he never signed a written release allowing Defendant to "collect, use, or store his biometric identifiers derived from his face." (*Id*. ¶ 38.) As a result, Plaintiff was "exposed to the risks and harmful conditions created by [Defendant's] violations of the BIPA. . . ." (*Id*. ¶ 39.)

Plaintiff does not know how many individuals were similarly harmed, but he alleges that "Defendant has collected, captured, received, or otherwise obtained biometric identifiers or biometric information from at least hundreds of consumers who fall into the definition of the Class." (*Id*. ¶ 42.)

## LEGAL STANDARD

The Federal Arbitration Act ("FAA") directs courts to treat arbitration agreements as they would any other agreement. *Kindred Nursing Centers Ltd. P'ship v. Clark*, 137 S. Ct. 1421, 1424 (2017). "Under the FAA, a court must compel arbitration when it finds that: (1) there is an enforceable written agreement to arbitrate; (2) the dispute falls within the scope of the arbitration agreement; and (3) a party refuses to arbitrate." *Smith v. Cavalry Portfolio Servs. LLC*, No. 20 C 1375, 2020 WL 7682236, at *1 (N.D. Ill. Dec. 26, 2020). "Parties may only be compelled to arbitrate those issues they have agreed to arbitrate." *Paragon Micro, Inc. v. Bundy*, 22 F. Supp. 3d 880, 887 (N.D. Ill. 2014). If there are any doubts as to the scope of the arbitrable issues, they should be resolved in favor of arbitration. *Id*.

Once a court is satisfied that the parties have agreed to arbitrate the issues at hand, it "'shall on application of one of the parties stay the trial of action until such arbitration has been had in accordance with the terms of the agreement.'" *Id*. (quoting 9 U.S.C. §§ 3, 4).

## ANALYSIS

### A. Motion to Compel Individual Arbitration

Defendant asserts that this dispute should be arbitrated based on the arbitration provision contained in the Terms of Service agreed to by OfferUp.[1] (Memo at 1–4, 9–14.) Plaintiff argues that Defendant should not be able to enforce the arbitration provision within the Terms of Service because Defendant was not a party to that agreement and cannot overcome that fact by

---

[1] Plaintiff does not admit that he agreed to OfferUp's Terms of Service but briefs the Motion as if the Terms of Service apply. (*See* Resp. at 9.) We will follow the same convention here.

3

invoking the common law doctrines of third-party beneficiary, equitable estoppel, and agency. (*See generally* Resp.)

The question of whether a non-signatory can enforce the terms of an arbitration agreement is governed by state law. *Scheurer v. Fromm Family Foods LLC*, 863 F.3d 748, 752 (7th Cir. 2017). Plaintiff argues that Illinois law should apply, while Defendant advocates for Washington law based on a choice of law provision in the Terms of Service. (Resp. at 5 n.2; Memo at 5.)

Since we exercise diversity jurisdiction over these claims, we will apply Illinois's choice of law rules to select the applicable state substantive law. *See, e.g.*, *McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 684 (7th Cir. 2014); *Kaufman v. American Exp. Travel Related Servs Co., Inc.*, No. 07 C 1707, 2008 WL 687224, at *4 (N.D. Ill. Mar. 7, 2008) ("The case was removed pursuant to CAFA, which is part of the diversity jurisdiction statute. A district court applies the choice of law rules of the state in which it sits in a diversity case.") (internal citations omitted).

"Before performing a choice of law analysis, the court must be sure that there is a conflict." *Moje v. Fed. Hockey League, LLC*, 377 F. Supp. 3d 907, 915 (N. D. Ill. 2019). "Under Illinois choice-of-law rules, a conflict of law exists only where the application of one state's law over that of another state will make a difference in the outcome of a case, and where there is no conflict in the relevant state law, a court will apply Illinois law." *Perdue v. Hy-Vee, Inc.*, 455 F. Supp. 3d 749, 758 (C.D. Ill. Apr. 20, 2020) (internal citations omitted).

In this case, the parties agree that there are no outcome-determinative differences between Illinois law and Washington law. (*See generally* Memo; Resp.) Accordingly, we will apply Illinois law. *Perdue*, 455 F. Supp. 3d at 758.[2]

Ordinarily, only signatories to an arbitration agreement are entitled to enforce it. *Ervin v. Nokia, Inc.*, 812 N.E. 2d 534, 539 (Ill. App. Ct. 2004). However, courts have recognized exceptions to this rule. *Id*. Defendant argues that three such exceptions apply in this case. (Memo at 9–14.) Specifically, Defendant claims that it can enforce the arbitration provision under common law doctrines of: (1) third-party beneficiary; (2) equitable estoppel; and (3) agency. (*Id*.) We will consider each of these arguments in turn.

    **i.    Third-party Beneficiary**

Under Illinois law, there are two types of third-party beneficiaries: intended and incidental. *Cont'l Cas. Co. v. Am. Nat'l Ins. Co.*, 417 F.3d 727, 734 (7th Cir. 2005). "An intended beneficiary is intended by the parties to the contract to receive a benefit for the performance of the agreement and has rights and may sue under the contract; an incidental beneficiary has no rights and may not sue to enforce them." *Estate of Willis v. Kiferbaum Const. Corp.*, 830 N.E. 2d 636, 643 (Ill. App. Ct. 2005). A third-party need not be named in an

---

[2] We separately agree with Plaintiff that it would be inappropriate to apply Washington law to this question based on the choice of law provision in the Terms of Service because we have not resolved the antecedent question of whether that document applies to the parties. *See Nucap Indus., Inc. v. Robert Bosch LLC*, 273 F. Supp. 3d 986, 1006 (N.D. Ill. 2017) ("Applying [the contract's] choice-of-law provision would assume the answer to the antecedent question of contract formation at issue. . . ."); *see also Kaufman*, 2008 WL 687224, at *3 ("[A]s an antecedent matter, the court must determine whether the parties have a valid contract, and, before it can do that, it must decide which state's law applies to the issue of contract formation. Only if the court finds a valid contract may it turn to the choice of law provision in the Agreement in order to determine the validity of the arbitration provision.")

agreement to be an intended beneficiary; however, "it must be identified in some manner, for example, by describing the class to which it belongs." *Cont'l Cas. Co.*, 417 F.3d at 734.

Defendant argues that it is an intended beneficiary of the Terms of Service; and therefore, also a beneficiary of the arbitration provision within the Terms of Service. (Memo at 10–11.) In support of its position, Defendant notes, among other things, that the Terms of Services has a provision relating to the TruYou feature for which it is a third-party service provider, as well as limitation-of-liability and indemnification provisions covering "OfferUp and the OfferUp Providers." (*Id.*) Defendant claims that it is an "OfferUp Provider" by virtue of the fact that it is an "affiliate" of OfferUp "with respect to the TruYou feature." (*Id.*)

According to Defendant, Plaintiff has broadly waived his rights to have disputes arising from or related to the Terms of Service, the OfferUp Service, and "the Materials" resolved in Court, and has instead, agreed to individual arbitration. (*Id*. at 11–12.) Defendant asserts that Plaintiff's BIPA claims fall within in the class of claims to be arbitrated. (*Id*.)

Plaintiff disagrees, arguing that Defendant was not an intended beneficiary of the arbitration provision because the language in the arbitration provision does not extend to anyone but OfferUp and its users. (Resp. at 6.) In support of this argument, Plaintiff points out that the arbitration provision would not make sense as applied to third parties because it contains a notice provision, requiring a user to provide notice of an arbitrable dispute to the other side. (*Id*. at 8.) The arbitration provision contains contact information for OfferUp but no direction as to how to contact third parties. (*Id*.) Plaintiff further observes that there is a provision in the Terms of Service expressly disclaiming a private right of action on the part of any third party. (*Id*. at 6.)

For the reasons that follow, we agree with Plaintiff: Defendant is not an intended third-party beneficiary of the arbitration provision. (*See* Memo. at Ex. A–E.)

6

The second sentence of the Terms of Service states, in bold, "**THESE TERMS INCLUDE A MANDATORY ARBITRATION PROVISION AND CLASS ACTION WAIVER PROVISION, WHICH AFFECT YOUR RIGHTS ABOUT HOW TO RESOLVE ANY DISPUTE WITH OFFERUP, INC.**" (*Id.*) No mention is made of the arbitration of disputes between users and third-party providers, just "OfferUp, Inc." and its users.

Likewise, the arbitration provision itself does not refer to arbitration involving Defendant or any class to which Defendant is part. Rather, it provides in relevant part:

> **20. Arbitration**
>
> PLEASE READ THE FOLLOWING SECTION CAREFULLY BECAUSE IT REQUIRES YOU TO SUBMIT TO BINDING ARBITRATION (INCLUDING A JURY TRIAL WAIVER) ANY AND ALL DISPUTES (OTHER THAN SPECIFIED INTELLECTUAL PROPERTY CLAIMS AND SMALL CLAIMS) WITH OFFERUP AND IT LIMITS THE MANNER IN WHICH YOU CAN SEEK RELIEF FROM OFFERUP (NO CLASS ARBITRATIONS, CLASS ACTIONS OR REPRESENTATIVE ACTIONS OR ARBITRATIONS).
>
> **A. Binding Arbitration.** Except for any disputes, claims, suits, actions, causes of action, demands or proceedings (collectively, "Disputes") arising out of or related to a violation of Section 7 or Disputes in which either party seeks to bring an individual action in small claims court or seeks injunctive or other equitable relief for the alleged unlawful use of intellectual property, including, without limitation, copyrights, trademarks, trade names, logos, trade secrets or patents, you and OfferUp agree (1) to waive your and OfferUp's respective rights to have any and all Disputes arising from or related to these Terms, the OfferUp Service or the Materials, resolved in a court, and (2) to waive your and OfferUp's respective rights to a jury trial. Instead, you and OfferUp agree to arbitrate Disputes through binding arbitration (which is the referral of a Dispute to one or more persons charged with reviewing the Dispute and making a final and binding determination to resolve it instead of having the Dispute decided by a judge or jury in court).

(*Id.*)[3] Elsewhere in the Terms of Service, "OfferUp," along with the terms "we" and "us" are defined as "OfferUp, Inc." (Memo at Ex. A–E.) Again, no mention is made of Defendant or a class of which Defendant is part.[4]

Defendant's arguments to the contrary are unavailing because they ignore the plain text of the arbitration provision. Nor is it clear that Defendant was an intended beneficiary of other provisions of the Terms of Service such that it is entitled to enforce the arbitration provision. For example, the TruYou provision (Section 4 of the Terms of Service) conveys rights and benefits to OfferUp, not Defendant. (*See* Memo. at Ex. A–E.) Other provisions relating to "OfferUp Providers" cannot be invoked by Defendant because it is not clear that Defendant is an "affiliate" of OfferUp.

The Terms of Service do not define the term "affiliate." (Memo at Ex. A–E.) Therefore, that term must be interpreted according to its "common and generally accepted meaning." *See Harrison Wells Partners, LLC v. Chieftain Constr., Ltd.*, No. 09 C 2445, 2010 WL 3404963, at *3 (N.D. Ill. Aug. 25, 2010) (internal quotation marks and citation omitted). Courts typically refer to dictionaries to derive such meanings. *See, e.g., Bank of America, N.A. v. Oberman, Tivoli & Pickert, Inc.*, 12 F. Supp. 3d 1092, 1103 (N.D. Ill. 2014); *Covinsky v. Hannah Marine Corp.*, 903 N.E.2d 422, 427 (Ill. App. Ct. 2009). Black's Law Dictionary defines "affiliate" as a "corporation that is related to another corporation by shareholdings or other means of control; a

---

[3] It appears as though a portion of this provision was inadvertently omitted from Exhibit A to Defendant's Memo, and a complete version submitted as an exhibit to Dkt. No. 23. (*See* Memo at Ex. A; Dkt. No. 23 at Ex. A.)
[4] Additionally, as Plaintiff observes, the notice subpart of Section 20 (not quoted here) would not make sense if applied to third-party service providers because it does not provide a mechanism for contacting them when a user has a dispute with them. (*Id.*)

subsidiary, parent, or sibling corporation." Affiliate Definition, *Black's Law Dictionary* (11th ed. 2019), *available at* Westlaw.

There is no indication that OfferUp and Defendant have any such relationship in this case. Defendant contends that it is "'related to [OfferUp] by. . . other means of control' with respect to the TruYou feature." (Defendant's Reply Memorandum of Law in Further Support of Its Motion to Stay and Compel Individual Arbitration ("Reply" (Dkt. No. 29) at 6.) In support of this assertion, Plaintiff points to the allegations in Plaintiff's Complaint that "OfferUp 'strongly encouraged [users] to register their identities' and 'partnered with Onfido' for this purpose." (*Id.*)

These allegations do not demonstrate that OfferUp exercised "control" over Defendant. Although the term "control" has different meanings depending on the context, it generally refers to the idea that one entity "exercise[s] power or influence over" another. *See, e.g.,* Control *vb*. Definition, *Black's Law Dictionary* (11th ed. 2019)*, available at* Westlaw. Parties may partner with one another without exerting "control" over one another.[5]

---

[5] Additionally, in Section 10 of the Terms of Service, OfferUp specifically disclaims any control over Third-Party Content:

> In using the OfferUp Service, you may view content, utilize services, or otherwise interact with content and services provided by third parties, including, but not limited to, the OfferUp Payment Solution provided by a third-party payment processor, the OfferUp fulfillment solution through third-party logistics providers, links and/or connections to websites, applications or services of such parties ("Third-Party Content"). OfferUp does not control, endorse or adopt any Third-Party Content. . . .

(Memo at Ex. A–E.) This reinforces the idea that OfferUp does not "control" Defendant, a self-identified "third-party service provider." (*See* Memo at 11.)

All these features of the Terms of Service make this case distinguishable from *Brown v. Worldpac, Inc.*, No. 17 CV 6396, 2018 WL 656082, at *1 (N.D. Ill. Feb. 1, 2018). In that case, there were numerous reasons to conclude that the arbitration provision extended to defendant, including the fact that the arbitration provision explicitly referenced a class of which defendant was part, and the agreement referred to that class "dozens" of times in the agreement. *Id*. at *3–4. In this case, the plain text of the document makes clear that the arbitration provision was not intended to extend to Defendant.

For these reasons, Defendant is not a third-party benficiary of the arbitration provision and cannot force this matter be arbitrated on that basis.

### ii. Equitable Estoppel

The parties disagree as to the appropriate standard for determining whether a non-signatory can enforce an arbitration agreement pursuant to the doctrine of equitable estoppel. (*See* Resp. at 8–10; Reply at 7–9.) Plaintiff contends that "[i]n Illinois, a claim of equitable estoppel exists where a person, by his or her statements or conduct, induces a second person to rely, to his or her detriment, on the statements or conduct of the first person." (Resp. at 8–9 (quoting *Warciak v. Subway Rests., Inc.*, 880 F.3d 870, 872 (7th Cir. 2018) (internal quotation marks and citation omitted).) According to Plaintiff, "[t]his detrimental reliance must be shown 'by clear, concise, and unequivocal evidence.'" (Resp. at 9 (quoting *Ervin*, 812 N.E.2d at 541 (internal quotation marks and citation omitted).)

By contrast, Defendant contends that detrimental reliance is not required to enforce an arbitration agreement under the principle of equitable estoppel. (Reply at 7.) According to Defendant, a non-signatory can compel arbitration based on equitable estoppel "when the signatory raises allegations of substantially interdependent and concerted misconduct by both the

10

non-signatory and one or more of the signatories to the contract." (Memo at 13 (quoting *Paragon Micro*, 22 F. Supp. 3d at 889–90 (internal quotation marks and citation omitted)).)

Plaintiff correctly points out that the standard set forth in Defendant's briefs is not the law in Illinois, but rather, federal common law. (Resp. at 8–9.) It is well established that courts should apply state, rather than federal, law when determining whether a contract's arbitration clause binds a non-signatory. *Warciak*, 880 F.3d at 871; *Scheurer*, 863 F.3d at 750.

Realizing its error, Defendant argues, for the first time in its Reply, that we should apply the *Paragon Micro* standard in lieu of the standard set forth in Plaintiff's brief because: (1) neither of the Illinois Supreme Court cases cited by Plaintiff deal with equitable estoppel in the contract or arbitration context; and (2) the Illinois Appellate Court cases cited by Plaintiff "are not binding on this Court and need not be followed where the court has 'a compelling reason to doubt that they have stated the law correctly.'" (Reply at 7–8 (quoting *AAR Aircraft & Engine Grp., Inc. v. Edwards*, 272 F.3d 468, 470 (7th Cir. 2001)).)

Setting aside the fact that Defendant waived this argument by raising it for the first time in its Reply,[6] this argument is not persuasive. Defendant states correctly that we are not obligated to follow Illinois Appellate Court decisions when we think that the Illinois Supreme Court would reach a different result. *AAR Aircraft*, 272 F.3d at 470. However, Plaintiff has not provided a compelling reason to believe that the Illinois Supreme Court would disagree with the Illinois Appellate Court regarding the test for equitable estoppel. Plaintiff states only that the Illinois Supreme Court is likely to adopt the test that Defendant propounded in its opening brief because it has recognized that "there is a liberal federal policy favoring arbitration agreements,

---

[6] *Eberhardt v. Brown*, 580 Fed. App'x 490, 491 (7th Cir. 2014) (observing that litigants waive arguments that they make for the first time in reply briefs); *Aparcedo v. Life Time Fitness, Inc.*, No. 16 C 1927, 2016 WL 5848955, at *2 (N.D. Ill. Oct. 6, 2016) (same).

11

and . . . the Court's views on arbitration have evolved and become more favorable over time."
(Reply at 8 (internal quotation marks and citation omitted).)

The liberal policy favoring arbitration agreements has its limits. "[N]othing in the statute authorizes a court to compel arbitration of any issues, or by any parties, that are not already covered in the agreement." *Equal Employment Opportunity Comm'n v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002). In other words, courts will not ignore longstanding contract law principles, simply to find that there is an enforceable agreement to arbitrate.

Contrary to Defendant's contention, there is good reason to believe that the Illinois Supreme Court *would* apply the detrimental reliance standard in the contract or arbitration context. Specifically, the detrimental reliance standard set forth by the Illinois Appellate Court in *Ervin*, 812 N.E.2d at 541, a case concerning the enforcement of an arbitration provision, is consistent with the standard used by the Illinois Supreme Court to assess whether equitable estoppel is appropriate in other contexts. *See, e.g., Geddes v. Mill Creek Country Club, Inc.*, 751 N.E.2d 1150, 1157 (Ill. 2001) (observing, in the context of a tort case, that "[e]quitable estoppel may be defined as the effect of the person's conduct whereby the person is barred from asserting rights that might otherwise have existed against the other party who, in good faith, relied upon such conduct and has been thereby led to change his or her position for the worse."). Accordingly, the detrimental reliance standard set forth in Plaintiff's brief is the appropriate standard to apply here.

Defendant addresses this standard for the first time in its Reply brief, so its argument is waived. *Eberhardt*, 580 Fed. App'x at 491; *Aparcedo*, 2016 WL 5848955, at *2. Defendant's argument fails for the separate reason that it goes to the merits of the case rather than the arbitration provision's enforcibility.

Defendant argues that it reasonably relied on representations made by Plaintiff in Section 4 of the Terms of Service when it provided Plaintiff with the TruYou feature. (Reply at 8–9.) Specifically, Defendant relied on Plaintiff's representation that Plaintiff would only use the TruYou feature if he had "all necessary permissions," and if doing so would not "violate any law." (*Id*.) Additionally, Defendant claims that it relied on the fact that Plaintiff gave OfferUp permission to disclose certain information to OfferUp's third-party service providers. (*Id*. at 9.) According to Defendant, "because Plaintiff effectively alleges that *he* violated the Terms of Service and provided information to Onfido without 'all necessary permissions' and in violation of the Biometric Information Privacy Act," Defendant suffered the detriment of being sued in this case. (*Id*.)

All of the representations allegedly made by Plaintiff that Defendant detrimentally relied upon relate to the merits of the case, not the issue of whether this case should be arbitrated. (*See* Reply at 7–9.) There is no indication that Defendant detrimentally relied on any representations made by Plaintiff concerning arbitration.

Apart from this issue, it is not clear that Plaintiff made representations in connection with the TruYou feature to which Defendant could have reasonably relied or that encompass the conduct at issue. As noted above, all of the representations that Plaintiff allegedly made in that provision were directed at OfferUp, not third parties.

For these reasons, the arbitration provision cannot be enforced on the basis of equitable estoppel.

### iii. Agency

In Illinois, an agent may invoke an arbitration agreement entered into by its principal. *See Ervin*, 349 Ill. App. 3d 512. "Agency is a consensual, fiduciary relationship between two

legal entities created by law, where the principal has the right to control the activities of the agent and the agent has the power to conduct legal transactions in the name of the principal." *Id.*; *see also Chemtool, Inc. v. Lubrication Technologies, Inc.*, 148 F.3d 742, 745 (7th Cir. 1998) ("The test of agency is whether the alleged principal has the right to control the manner and method in which work is carried out by the alleged agent and whether the alleged agent can affect the legal relationships of the principal.") (internal quotation marks and citations omitted).

Defendant argues that "Plaintiff's allegations and the discussion of the TruYou feature in the Terms of Service establish that [it] was acting as OfferUp's agent in connection with the TruYou feature." (Memo at 13.) In support of this statement, Defendant points to the allegations "that OfferUp 'partnered with Onfido' with respect to the TruYou feature, that Plaintiff provided the information at issue through the OfferUp app, and that 'there was almost no notice whatsoever that Onfido is even involved in the process.'" (*Id.* (citing Compl. ¶¶ 33–35).) Defendant also highlights Section 4 of the Terms of Service, in which OfferUp indicates that it may disclose Plaintiff's information to a "third-party service provider." (Memo at 14.)

Plaintiff counters that the term "agent" has a specific meaning under Illinois law, and Defendant has not satisfied that standard. (Resp. at 11.) Plaintiff has the better argument. Nothing in the record suggests that there was a formal principal-agent relationship between Defendant and OfferUp, such that OfferUp could control Defendant's activities, or Defendant could conduct legal transactions in OfferUp's name. Companies routinely partner with one another to provide services to customers without acting as one another's agents. Absent further evidence to demonstrate a principal-agent relationship between OfferUp and Defendant, we cannot conclude that such a relationship exists, and Defendant's motion fails on this basis as well.

**B. Motion to Stay**

Since there is no agreement to arbitrate between the parties, there is no basis to stay the litigation.

## CONCLUSION

For the reasons set forth above, we deny Defendant's Motion. (Dkt. No. 20.) It is so ordered.

                                                                     _____
                                                                     Honorable Marvin E. Aspen
                                                                     United States District Judge

Dated: January 5, 2021
       Chicago, Illinois