IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FREDY SOSA, individually, and on behalf of all others similarly situated, ) ) ) Plaintiff, ) ) ) v. ) ) ) ONFIDO, INC., a Delaware corporation, ) ) Defendant. ) | Case No. 1:20-cv-04247<br><br>Honorable Marvin E. Aspen |

## DOCKETING STATEMENT

Pursuant to Seventh Circuit Rules 3(c) and 28(a), Defendant-Appellant Onfido, Inc. ("Defendant" or "Onfido") discloses as follows:

### I. DISTRICT COURT'S JURISDICTION

The District Court has jurisdiction over this case, which was timely removed from the Circuit Court of Cook County, Illinois, based on diversity of citizenship, 28 U.S.C. § 1332(a)(1), and on the Class Action Fairness Act, 28 U.S.C. § 1332(d). (Doc. 1.)

**A. This Action Was Removable Under 28 U.S.C. §§ 1332(a)(1) and 1441(b)**

This case was properly removed under 28 U.S.C. §§ 1332(a)(1) and 1441(b) because the parties are citizens of different states and the amount in controversy exceeds the sum or value of $75,000, exclusive of costs and interest. *See Fernandez v. Kerry, Inc.*, No. 17 C 8971, 2020 WL 1820521, at *3-4 (N.D. Ill. Apr. 10, 2020).

**1. There is complete diversity of citizenship.**

Fredy Sosa ("Plaintiff" or "Sosa"), the only named plaintiff, is a citizen of Illinois. *See* Doc. 1, Ex. 1 ¶ 8. Onfido is incorporated in Delaware, *see id.* ¶ 9, and is therefore a citizen of that state, *see* 28 U.S.C. § 1332(c)(1). Sosa alleges that Onfido's principal place of business is in

London, *see* Doc. 1, Ex. 1 ¶ 9, which would make Onfido a citizen of the United Kingdom, *see* 28 U.S.C. § 1332(c)(1). In fact, however, Onfido's principal place of business is in San Francisco, California, making Onfido a citizen of California. *See* Doc. 1, Ex. 4 (Declaration of Kevin Trilli) ¶ 3. Thus, the parties are completely diverse. *See Fernandez*, 2020 WL 1820521, at *3.

    2.    **The amount in controversy exceeds $75,000.**

It is apparent from Sosa's Complaint that the amount in controversy for his individual claim against Onfido exceeds $75,000, as required by 28 U.S.C. § 1332(a).

**First**, Sosa seeks statutory damages. BIPA provides for "liquidated damages of $5,000" "for each violation" that is committed "intentionally or recklessly." 740 ILCS 14/20, 14/20(2). Sosa's Complaint alleges the following with respect to Sosa:

- Onfido allegedly violated Section 15(b) of BIPA, *see* Doc. 1, Ex. 1 ¶¶ 47, 49;

- Onfido allegedly violated Section 15(a) of BIPA, *see id*. ¶¶ 48-49; and

- Onfido allegedly committed the above violations intentionally or recklessly, *see id*. ¶ 10 (alleging that Onfido "is and has been aware that it is collecting biometric data from Illinois residents, without complying with BIPA"); *id*. ¶ 29 (alleging that Onfido failed to comply with BIPA even though "Onfido is well aware of Illinois consumers' privacy rights under BIPA").

Accordingly, Sosa alleges that at least $10,000 in statutory damages are in controversy based on his individual claim against Onfido (two violations of BIPA multiplied by $5,000 in statutory damages for each violation equals $10,000 in statutory damages).[1]

**Second**, Sosa seeks attorneys' fees and costs. *See id*. at 14-15; *see also* 740 ILCS 14/20(3) (prevailing parties may recover "reasonable attorneys' fees and costs, including expert witness fees and other litigation expenses" under BIPA). "Legal fees may count toward the amount in

---

[1] Defendant disputes that Plaintiff can recover separately for each statutory subsection that was allegedly violated. However, Plaintiff's allegations and requested relief must be accepted as true for purposes of assessing the amount in controversy.

controversy when the prevailing party is entitled to recover them as part of damages." *Gardynski-Leschuck v. Ford Motor Co.*, 142 F.3d 955, 958 (7th Cir. 1998). Thus, in calculating the amount in controversy, this Court may consider the attorneys' fees that Sosa has incurred for investigating his claims, preparing and filing his Complaint, and other pre-removal tasks. While Onfido cannot know precisely the fees incurred, this Court should assume that those fees are substantial and potentially in excess of the jurisdictional amount. *Cf.* Plaintiffs' Mot. for and Mem. of Law in Support of Attorneys' Fees, Expenses and Incentive Awards at 6, *N.P. v. Standard Innovation Corp.*, No 1:16-cv-8655, 2017 WL 3335340 (N.D. Ill. June 15, 2017) (Dkt. 36) (Sosa's counsel describing extensive pre-suit work undertaken on behalf of different clients in a different privacy case, including "thoroughly investigat[ing] Standard Innovation's We-Vibe product line and the ways in which the vibrators interacted with the We-Connect App and used their Bluetooth functionality"; "consult[ing] on numerous occasions with" clients; and "research[ing] the Defendant company and product line, studying the manner in which Standard Innovation markets its We-Vibe line, reviewing the We-Vibe device and We-Connect application, and review[ing] consumer Complaints about the device").

**Third**, Sosa seeks broad injunctive relief. *See* Doc. 1, Ex. 1 at 14 (seeking "injunctive and equitable relief . . . , including an Order requiring [Onfido] to collect, store, and use biometric identifiers or biometric information in compliance with the BIPA"). This Court may consider the costs of that relief when calculating the amount in controversy. *See Tropp v. W.-S. Life Ins. Co.*, 381 F.3d 591, 595 (7th Cir. 2004) (explaining that "the cost a defendant incurs in complying with injunctive relief is a legitimate consideration in a jurisdictional inquiry"). And those costs substantially increase the amount in controversy. For example, if this Court determined that Onfido is not in compliance with Section 15(b) of BIPA as alleged by Sosa (a contention Onfido

vigorously denies) and therefore ordered Onfido to re-engineer its services to change the interface for end users who interact with Onfido's technology through third parties, then Onfido estimates that it would incur at least $80,000 in computer engineering costs alone. *See* Doc. 1, Ex. 4 ¶ 4.

In short, it is apparent from Sosa's Complaint that the amount in controversy for his individual claim against Onfido exceeds $75,000. *See, e.g., Fernandez*, 2020 WL 1820521, at *3; *see also Hunt v. DaVita, Inc.*, 680 F.3d 775, 777 (7th Cir. 2012); *Peatry v. Bimbo Bakeries USA, Inc.*, 393 F. Supp. 3d 766, 770 (N.D. Ill. 2019).

### B. This Action Was Also Removable under the Class Action Fairness Act of 2005

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant" 28 U.S.C. § 1441(a). This action was removable under § 1441 because the District Court has original jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"). *See* 28 U.S.C. § 1332(d); *see also* 28 U.S.C. § 1453(b) (procedure for removing class actions).

Under CAFA, federal district courts have original jurisdiction over any putative class action in which (1) the aggregate number of members in the proposed class is 100 or more; (2) the matter in controversy "exceeds the sum or value of $5,000,000, exclusive of interest and costs"; and (3) the parties are minimally diverse—that is, "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2), (d)(2)(C); *see also Roppo v. Travelers Com. Ins. Co.*, 869 F.3d 568, 578 (7th Cir. 2017) (requirements for CAFA jurisdiction). Because all of those requirements are met, and because Onfido has met all other requirements, this action is removable under CAFA.

4

> **1. This is a putative class action in which the aggregate number of proposed class members is 100 or more.**

This is a putative "class action" under CAFA, which defines "class action" as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B). Sosa filed this action under Section 2-801 of the Illinois Code of Civil Procedure, which allows "for the maintenance of a class action" when the alleged "class is so numerous that joinder of all members is impracticable"; "[t]here are questions of fact or law common to the class, which common questions predominate over any questions affecting only individual members"; "[t]he representative parties will fairly and adequately protect the interest of the class"; and "[t]he class action is an appropriate method for the fair and efficient adjudication of the controversy." 735 ILCS 5/2-801(1)-(4). The requirements for class certification under Section 2-801 parallel those of Federal Rule of Civil Procedure 23. *Compare* 735 ILCS 5/2-801 *with* Fed. R. Civ. P. 23.

Sosa proposes to represent a class of individuals who allegedly interacted with Onfido's identity verification services through third parties. More specifically, Sosa seeks to represent a class defined as "[a]ll residents of the State of Illinois who had their biometric identifiers or biometric information, including faceprints, collected, captured, received, otherwise obtained, or disclosed by Onfido while residing in Illinois." Doc. 1, Ex. 1 ¶ 41 (emphasis added). Sosa alleges that there are "at least hundreds" of class members, *id.* ¶ 42, therefore satisfying the first element. Moreover, based on Onfido's preliminary investigation, at least 501 individuals who interacted with Onfido's identity verification services through third parties in the last 12 months uploaded a government-issued identity document issued by the State of Illinois. *See* Doc. 1, Ex. 4 ¶ 6. Accordingly, while Onfido does not concede that Sosa's proposed class is certifiable, lawful, or

otherwise proper, and while Onfido expressly reserves the right to raise all arguments and defenses to Sosa's allegations, including Sosa's class certification allegations, the alleged class, as defined by the allegations of Sosa's Complaint, numbers at least 501 individuals.

**2. The amount in controversy exceeds $5,000,000.**

CAFA requires courts to aggregate the claims of putative class members "to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs." 28 U.S.C. § 1332(d)(6). Thus, a court must "determine whether it has jurisdiction by adding up the value of the claim of each person who falls within the . . . proposed class and determine whether the resulting sum exceeds $5 million." *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013). The amount in controversy "concerns what the plaintiff is claiming . . . , not whether plaintiff is likely to win or be awarded everything he seeks." *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 449 (7th Cir. 2005) (emphasis added).

Sosa does not allege a specific amount in controversy. Accordingly, Onfido need only make "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81 (2014). Here, it is plain that the amount in controversy exceeds the $5,000,000 threshold.

**First,** Sosa seeks statutory damages on his own behalf and on behalf of each putative class member. As noted above, BIPA provides for "liquidated damages of $5,000" "for each violation" that is committed "intentionally or recklessly." 740 ILCS 14/20, 14/20(2). Sosa's Complaint alleges the following with respect to Sosa and each member of the putative class:

- Onfido violated Section 15(b) of BIPA, *see* Doc. 1, Ex. 1 ¶¶ 47, 49;

- Onfido violated Section 15(a) of BIPA, *see id*. ¶¶ 48-49; and

- Onfido's violations were intentional or reckless, *see id*. ¶ 10 (alleging that Onfido "is and has been aware that it is collecting biometric data from Illinois residents, without

6

complying with BIPA"); *id*. ¶ 29 (alleging that Onfido failed to comply with BIPA even though "Onfido is well aware of Illinois consumers' privacy rights under BIPA").

Further, as explained above, Onfido's preliminary investigation indicates that at least 501 individuals who interacted with Onfido's identity verification services through third parties in the last 12 months uploaded a government-issued identity document issued by the State of Illinois. *See supra* Section B.1. Accordingly, while Onfido does not concede that Sosa's proposed class is certifiable, lawful, or otherwise proper, and while Onfido expressly reserves the right to raise all arguments and defenses to class certification, the proposed class, as defined by the allegations of Sosa's Complaint and based on Onfido's preliminary investigation, numbers at least 501 individuals. As a result, Sosa alleges that at least $5,010,000 in statutory damages are in controversy (501 class members multiplied by two violations of BIPA equals 1,002 violations; 1,002 violations multiplied by $5,000 in statutory damages for each violation equals $5,010,000 in statutory damages).

**Second**, as discussed above, Sosa seeks attorneys' fees and costs, *see supra* Section A.2, and "where attorneys' fees are recoverable as a matter of law or contract, they may be reckoned into the jurisdictional amount." *Stull v. YTB Int'l, Inc.*, No. 10-600-GPM, 2010 WL 4008153, at *3 (S.D. Ill. Oct. 13, 2010).

**Third**, as also discussed above, Sosa seeks broad injunctive relief, *see supra* Section II.A.2, and this Court may consider the costs of that relief when calculating the amount in controversy, *see id*.

In short, it is apparent from Sosa's Complaint that the amount in controversy for purposes of CAFA exceeds $5,000,000. *See Appert v. Morgan Stanley Dean Witter, Inc.*, 673 F.3d 609, 617-18 (7th Cir. 2012) ("Morgan Stanley has provided a good-faith estimate that plausibly explains how the stakes exceed $5 million. That is sufficient."); *Blomberg v. Serv. Corp. Int'l*, 639 F.3d

761, 764 (7th Cir. 2011) ("Once the proponent of federal jurisdiction has explained plausibly how the stakes exceed $5,000,000 . . . the case belongs in federal court unless it is legally impossible for the plaintiff to recover that much.").

### 3. The parties are minimally diverse.

The parties are minimally diverse, as CAFA requires, because "any member of [the class] of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A). As noted above, Sosa is a citizen of Illinois. *See* Doc. 1, Ex. 1 ¶ 8. Onfido is incorporated in Delaware, *see id.* ¶ 9, and is headquartered in California, *see* Doc. 1, Ex. 4 ¶ 3, and is therefore a citizen of Delaware and California, see 28 U.S.C. § 1332(c)(1).

### 4. None of CAFA's exceptions bar removal.

This action does not fall within the exceptions to removal jurisdiction under CAFA. Section 1332(d)(4) requires a federal court to decline jurisdiction over a class action when, among other things, "greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed," and at least one defendant whose "alleged conduct forms a significant basis for the claims asserted by the proposed class . . . is a citizen of the State in which the action was originally filed." 28 U.S.C. § 1332(d)(4)(A); *see also* 28 U.S.C. § 1332(d)(4)(B) (similarly excluding cases where "two thirds or more of" the class members and "the primary defendants . . . are citizens of the State in which the action was originally filed"). Section 1332(d)(4) does not apply here because Onfido is not a citizen of Illinois, where the action was originally filed. Likewise, the discretionary exemptions in Section 1332(d)(3) apply only where "the primary defendants are citizens of the State in which the action was originally filed." 28 U.S.C. § 1332(d)(3); *see also Roppo*, 869 F.3d at 585 (local controversy and

8

discretionary CAFA exceptions do not apply when primary defendant is not citizen of state in which action was filed).

Section 1332(d)(5)(B) requires a court to decline jurisdiction when the number of all class members is less than 100. That does not apply here, because Sosa has alleged a class of "at least hundreds."

Sections 1332(d)(9) and 1453(d) exempt certain securities and corporate-governance cases from CAFA's broad jurisdictional grant. *See* 28 U.S.C. § 1332(d)(9) (explaining that § 1332(d)(2) does not apply to cases arising under several sections of the Securities Act of 1933, several sections of the Securities Exchange Act of 1934, and certain state corporate governance laws); *see id*. § 1453(d) (same). Those provisions do not bar jurisdiction here because Sosa's claims do not arise under the Securities Act of 1933 or the Securities Exchange Act of 1934 nor do they involve state-centric corporate governance issues.

### C. Venue and Intra-District Assignment Are Proper

The Northern District of Illinois, Eastern Division was the proper venue and intra-district assignment for this action upon removal because this "district and division embrac[e]" the Circuit Court of Cook County, Illinois, where the Complaint was filed. *See* 28 U.S.C. § 1441(a).

### D. Onfido Satisfied All Other Requirements For Removal

Onfido timely filed its Notice of Removal. Onfido was served with a copy of the Complaint and Summons on June 18, 2020. *See* Doc. 1, Ex. 1 (Complaint); Doc. 1, Ex. 2 (Summons). Onfido subsequently filed and served its Notice of Removal within 30 days of said service, as required by 28 U.S.C. § 1446(b).

Further, as required by 28 U.S.C. § 1446(a), Onfido filed with its Notice of Removal true and correct copies of all process, pleadings, and orders served upon Onfido in the state-court

9

action. The Complaint (Doc. 1, Ex. 1) was the only document that has been filed in the state court action at the time of removal. A true and correct copy of the state court docket was attached to the Notice of Removal as Exhibit 3.

Finally, Onfido promptly served on Sosa and filed with the Circuit Court a "Notice of Removal to Federal Court." Onfido also filed with this Court a "Certificate of Service of Notice to Adverse Party of Removal to Federal Court." 28 U.S.C. § 1446(d); *see also* Fed. R. Civ. P. 5(d).

### E. There Is Article III Jurisdiction Over Plaintiff's Claims

The Seventh Circuit holds there is Article III jurisdiction over BIPA claims like the ones Plaintiff brings in this case. *See Fox v. Dakkota Integrated Sys., LLC*, 980 F.3d 1146, 1154-55 (7th Cir. 2020) (holding there is Article III jurisdiction over claims under Section 15(a) of BIPA where plaintiff alleges unlawful retention of data)[2]; *Bryant v. Compass Group USA, Inc.*, 958 F.3d 617 (7th Cir. 2020) (holding there is Article III jurisdiction over Section 15(b) claims).

### V. APPELLATE COURT'S JURISDICTION

Pursuant to the Federal Arbitration Act, 9 U.S.C. § 16(a)(1)(A) & (B), Defendant may immediately appeal, as of right, any order refusing to stay a case or to compel arbitration under 9 U.S.C. §§ 3 and 4.

---

[2] Plaintiff alleges that Onfido unlawfully stores allegedly biometric data (Doc. 1, Ex. 1 ¶¶ 6, 31 (referring to unlawful storage)); retains "biometric identifiers" in "numerous, potentially massive databases" (Doc. 1, Ex. 1 ¶ 27); and may retain allegedly biometric information indefinitely (Doc. 1, Ex. 1 ¶ 30 ("A consumer who established his or her identity through Onfido does so without any knowledge of when his or her biometric identifiers will be removed from Onfido's databases—or if they ever will be.").). Plaintiff lists as a question common to the class "whether Defendant complies with any such written [retention and destruction] policy (if one exists)". (Doc. 1, Ex. 1 ¶43(f).) He alleges that BIPA requires private entities to "actually adhere to that retention schedule and actually delete the biometric information," but that "Onfido fails to comply with these BIPA mandates." (Doc. 1, Ex. 1 ¶¶ 48-49.) Section 15(a) requires destruction "when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first." 740 ILCS 14/15(a).

10

The District Court entered its Memorandum Opinion and Order ("Order") denying Defendant's Motion to Stay and Compel Individual Arbitration, which was brought pursuant to 9 U.S.C. §§ 3 and 4, on January 5, 2021. (Doc. 31)

Defendant filed its Notice of Appeal in the District Court on January 15, 2021, which is within the 30-day period required by Fed R. App. P. 4(a)(1)(A).

Dated: January 15, 2021

Respectfully submitted,

ONFIDO, INC.

By: /s/ *Bonnie Keane DelGobbo*

Bonnie Keane DelGobbo (bdelgobbo@bakerlaw.com)
**BAKER & HOSTETLER LLP**
One North Wacker Drive, Suite 4500
Chicago, Illinois 60606-2841
Telephone: (312) 416-6200

Joel Griswold (jcgriswold@bakerlaw.com)
**BAKER & HOSTETLER LLP**
SunTrust Center
200 South Orange Avenue, Suite 2300
Orlando, Florida 32801-3432
Telephone: (407) 649-4088

Paul Karlsgodt (pkarlsgodt@bakerlaw.com)
**BAKER & HOSTETLER LLP**
1801 California Street, Suite 4400
Denver, Colorado 80202-2662
Telephone: (303) 764-4013

*Counsel for Defendant*

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that she caused a true copy of the foregoing document to be filed and served via the Court's CM/ECF system, which will send notice of the filing to all counsel of record. Parties may access the filing through the Court's CM/ECF system.

/s/ Bonnie Keane DelGobbo