# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| FREDY SOSA, individually, and on behalf of all others similarly situated, ) ) ) Plaintiff, ) ) v. ) ) ONFIDO, INC., a Delaware corporation, ) ) Defendant. ) | Case No. 1:20-cv-04247 Hon. Marvin E. Aspen |

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS RULE 12(b)(6) MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Bonnie Keane DelGobbo (bdelgobbo@bakerlaw.com)
Amy L. Lenz (alenz@bakerlaw.com)
**BAKER & HOSTETLER LLP**
1 North Wacker Drive, Suite 4500
Chicago, IL 60606
Telephone: (312) 416-6200
Facsimile: (312) 416-6201

Joel Griswold (jcgriswold@bakerlaw.com)
**BAKER & HOSTETLER LLP**
SunTrust Center
200 S. Orange Ave., Suite 2300
Orlando, FL 32801-3432
Telephone: (407) 649-4088

**TABLE OF CONTENTS**

Page

INTRODUCTION ...................................................................................................................1

BACKGROUND ....................................................................................................................2

ARGUMENT ..........................................................................................................................3

    I.     BIPA ................................................................................................................3

    II.    Legal Standard ................................................................................................4

    III.   Plaintiff Does Not State A Claim For Any Relief Because BIPA Expressly States That Photographs And Information Derived From Photographs Are Not Covered By BIPA. ........................................................................................4

    IV.   Plaintiff Does Not State A Claim For $5,000 In Liquidated Damages Because Plaintiff Does Not Plead Facts From Which To Reasonably Infer That Defendant Intentionally or Recklessly Violated BIPA. ........................................6

    V.    Plaintiff Does Not State A Claim For $1,000 In Liquidated Damages Because Plaintiff Does Not Plead Facts From Which To Reasonably Infer That Defendant Negligently Violated BIPA. ..................................................................8

    VI.   BIPA Violates The First Amendment. ..................................................................9

           a.    BIPA Is An Unconstitutional Restraint on Commercial Speech. ...............9

           b.    Alternatively, BIPA Is A Content-Based Restriction Subject To Strict Scrutiny. ...................................................................................................12

CONCLUSION ........................................................................................................................13

i

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ............................................................................................................... 4

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007) ............................................................................................................... 4

*Bruns v. City of Centralia*,
 2014 IL 116998 .................................................................................................................. 8, 9

*Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*,
 447 U.S. 557 (1980) ............................................................................................................. 11

*Chiriboga v. Nat'l R.R. Passenger Corp.*,
 687 F. Supp. 2d 764 (N.D. Ill. 2009) ..................................................................................... 9

*Cupp v. Murphy*,
 412 U.S. 291 (1973) ............................................................................................................. 11

*Daniel v. Cantrell*,
 375 F.3d 377 (6th Cir. 2004) ............................................................................................... 12

*Huggins v. SpaClinic, LLC*,
 No. 09 C 2677, 2010 WL 963924 (N.D. Ill. Mar. 11, 2010) ................................................. 8

*Komorowski v. All-American Indoor Sports, Inc.*,
 No. 13-2177, 2013 WL 4766800 (D. Kan. Sept. 4, 2013) ..................................................... 7

*Mijatovich v. Columbia Sav. & Loan Ass'n*,
 168 Ill. App. 3d 313 (1st Dist. 1988) ..................................................................................... 7

*Nat'l Inst. of Family & Life Advocates v. Becerra*,
 138 S. Ct. 2361 (2018) ......................................................................................................... 13

*Neuberg v. Michael Reese Hosp. & Med. Ctr.*,
 60 Ill. App. 3d 679 (1st Dist. 1978) ....................................................................................... 7

*People v. Sequoia Books, Inc.*,
 127 Ill. 2d 271 (1989) .......................................................................................................... 11

*Plocar v. Dunkin' Donuts of Am., Inc.*,
 103 Ill. App. 3d 740 (1st Dist. 1981) ..................................................................................... 6

*Pub. Fin. Corp. v. Davis*,
   66 Ill. 2d 85 (1976) ........................................................................................................6

*Reed v. Town of Gilbert*,
   576 U.S. 155 (2015)......................................................................................................12

*Rogers v. CSX Intermodal Terminals, Inc.*,
   409 F.Supp.3d 612 (N.D. Ill. 2019) ................................................................................7

*Sea v. CCCJV Am. Holdings, Inc.*,
   No. CV 11-05031, 2011 WL 4946507 (C.D. Cal. Oct. 18, 2011) .................................8

*Smith v. Daily Mail Pub. Co.*,
   443 U.S. 97 (1979)........................................................................................................11

*Smith v. Maryland*,
   442 U.S. 735 (1979)......................................................................................................13

*Sorrell v. IMS Health, Inc.*,
   564 U.S. 552 (2011)..................................................................................................9, 10

*State v. Madrigal*,
   241 Ill. 2d 463 (2011) ..................................................................................................12

*Tobolt v. Allstate Ins. Co.*,
   75 Ill. App. 3d 57 (1st Dist. 1979) ..............................................................................6, 7

*U.S. West, Inc. v. FCC*,
   182 F.3d 1224 (10th Cir. 1999) .................................................................................9, 10

*United States v. Caira*,
   833 F.3d 803 (7th Cir. 2016) ........................................................................................13

*United States v. Dionisio*,
   410 U.S. 1 (1973)..........................................................................................................11

*United States v. Emmett*,
   321 F.3d 669 (7th Cir. 2003) ........................................................................................11

*Vidoni v. Acadia Corp.*,
   No. 11-cv-00448, 2012 WL 1565128 (D. Me. Apr. 27, 2012) ......................................7

*Ziarko v. Soo Line R. Co.*,
   161 Ill. 2d 267 (Ill. 1994)................................................................................................6

**Statutes**

740 ILCS 14/1.................................................................................................................3, 11

iv

740 ILCS 14/10............................................................................................................... *passim*

740 ILCS 14/15(b) ...................................................................................................................3

740 ILCS 14/20.................................................................................................................4, 6

740 ILCS 14/20 (1) ..................................................................................................................1

740 ILCS 14/20 (2) ...............................................................................................................1, 8

740 ILCS 14/25....................................................................................................................10

**Rules**

Fed. R. Civ. P. 12(b)(6)....................................................................................................1, 4, 5

4810-8178-6105.3

Plaintiff Fredy Sosa's ("Plaintiff") putative Class Action Complaint (Doc. 1-1 at PageID #13-27) ("Complaint") must be dismissed with prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure because Plaintiff has not pled facts plausibly demonstrating a BIPA claim.

**INTRODUCTION**

BIPA expressly states that photographs are not covered by the Act. They are expressly carved out of the definition of biometric identifier and biometric information. 740 ILCS 14/10 ("biometric identifiers do not include … photographs…" ; "Biometric information" is "any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual."; "Biometric information does not include information derived from items or procedures excluded under the definition of biometric identifiers.") Accordingly, Defendant did not violate BIPA at all, and the Complaint should be dismissed in its entirety and with prejudice.

Alternatively, even if the Court determines that Plaintiff has stated a claim that Defendant violated BIPA, Plaintiff certainly does not allege facts from which a reasonable inference could be drawn that Defendant intentionally, recklessly, or negligently violated BIPA – as is necessary to state a claim for liquidated damages under 740 ILCS 14/20 (1) & (2). This is particularly true in light of BIPA's express carveout language pertaining to photographs. Accordingly, at a minimum, Plaintiff's claims for liquidated damages should be dismissed with prejudice.

Furthermore, BIPA is an unconstitutional restraint on speech in violation of the First Amendment. The statute cannot survive either strict scrutiny or heightened scrutiny and consequently is invalid.

## BACKGROUND

Plaintiff alleges[1] that "Defendant Onfido markets and sells biometric software that purports to help businesses identify and register customers." (Compl. ¶ 1.) Plaintiff alleges he "is a member of an online marketplace where consumers buy and sell goods" and "the online marketplace partnered up with Onfido to establish its users' identities." (Compl. ¶¶ 33-34.) In particular, Plaintiff alleges he "established his identity through the online marketplace's mobile application by uploading a photograph of his driver's license and a photograph of his face" and "Onfido subsequently used biometric identification technology to extract his biometric information and compare the two photographs." (Compl. ¶ 35.) Plaintiff alleges that Onfido's "biometric software extracts and compares numerical biometric data from facial images to understand whether two faces are likely to be a match" and "checks whether uploaded facial images show signs of fraud by, for example, comparing a person's numerical biometric data to the biometric data of known masks." (Compl. ¶¶ 24-25.)

Based on these allegations, Plaintiff asserts individual and putative class claims for alleged violations of BIPA. (Compl. ¶¶ 46-58.) He seeks to represent "[a]ll residents of the State of Illinois who had their biometric identifiers or biometric information, including faceprints, collected, captured, received, otherwise obtained, or disclosed by Onfido while residing in Illinois." (Compl. ¶ 41.)

Plaintiff does *not* allege that he was unaware his faceprint was being used for identification and fraud protection. To the contrary, Plaintiff knowingly submitted a photograph of his driver's

---

[1] Onfido's arguments and use of terms in this brief are based on Plaintiff's allegations, which must be taken as true at the pleading stage. Onfido does not admit that Plaintiff's allegations and characterizations in the Complaint are accurate, and, for example, denies the system at issue uses "biometric identifiers," "biometric information," "facial geometry," or "faceprints" as defined by BIPA.

2

license and a photograph of his face when he signed up to use the online marketplace. (Compl. 35 ("On or around April 2020, Plaintiff Sosa established his identity through the online marketplace's mobile application by uploading a photograph of his driver's license and a photograph of his face.")) Instead, he alleges only that Onfido failed to give notice and obtain Plaintiff's consent "in writing." (*E.g.,* Compl. ¶¶ 36-38.)

## ARGUMENT

### I. BIPA

BIPA regulates a private entity's collection, capture, purchase, receipt through trade or otherwise obtaining a "biometric identifier" and "biometric information." 740 ILCS 14/1 *et seq*. A "biometric identifier" is "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry," but, significantly, "**biometric identifiers do not include … photographs**…" 740 ILCS 14/10 (emphasis added). "Biometric information" is "any information, regardless of how it is captured, converted, stored, or shared, **based on an individual's biometric identifier** used to identify an individual." *Id*. (emphasis added). "**Biometric information does not include information derived from items or procedures excluded under the definition of biometric identifiers**." *Id.* (emphasis added).

Specifically, BIPA provides that:

> No private entity may collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information, unless it first:
> (1) informs the subject or the subject's legally authorized representative in writing that a biometric identifier or biometric information is being collected or stored;
> (2) informs the subject or the subject's legally authorized representative in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and
> (3) receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative.

740 ILCS 14/15(b).

3

BIPA provides that "[a]ny person aggrieved by a violation" of BIPA can obtain the following relief:

> (1) against a private entity that **negligently violates** a provision of this Act, liquidated damages of $1,000 or actual damages, whichever is greater;
> (2) against a private entity that **intentionally or recklessly violates** a provision of this Act, liquidated damages of $5,000 or actual damages, whichever is greater;
> (3) reasonable attorneys' fees and costs, including expert witness fees and other litigation expenses; and
> (4) other relief, including an injunction, as the State or federal court may deem appropriate.

740 ILCS 14/20 (emphasis added). BIPA does not provide strict liability for a damages claim. *Id*.

## II. Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A pleading is required to contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Moreover, "threadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." *Id*. Here, Plaintiff's Complaint must be dismissed pursuant to Rule 12(b)(6) because Plaintiff has not pled facts plausibly demonstrating a BIPA claim.

## III. Plaintiff Does Not State A Claim For Any Relief Because BIPA Expressly States That Photographs And Information Derived From Photographs Are Not Covered By BIPA.

Plaintiff does not state a claim for any relief because Defendant has not violated BIPA. In the Complaint, Plaintiff seeks: (1) class certification, (2) a declaratory judgment that Defendant violated BIPA, (3) statutory damages for each willful or negligent violation of BIPA, (4) "injunctive and other equitable relief … including an Order requiring Defendant to collect, store, and use biometric identifiers or information in compliance with the BIPA," (5) reasonable

4

attorneys' fees and costs, (6) pre- and post-judgment interest, and (7) "other and further relief as equity and justice may require." (Compl. pp. 14-15).

BIPA does not apply to Onfido's software because BIPA's plain language expressly excludes both photographs and information derived from photographs. BIPA covers two categories of information: (1) original sources of information about a person ("biometric identifiers," defined as a "retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry") and (2) data derived from those original sources ("biometric information," defined as "information . . . based on an individual's biometric identifier"). 740 ILCS 14/10. BIPA's definition of "biometric identifiers" expressly excludes "photographs," and BIPA only covers a "scan of…face geometry," not a scan of a photograph. *Id.* Moreover, BIPA's definition of "biometric information" excludes "information derived from items or procedures excluded under the definition of biometric identifiers," such as photographs. *Id.*

Here, Plaintiff's claim that Onfido violated BIPA is based on his allegations that Onfido's software captures information from photographs submitted by users. (*See, e.g.,* Compl. ¶¶ 22, 24 (alleging that "a consumer establishing his or her identity through Onfido must upload a copy of his or her identification . . . and a photo of his or her face" and that Onfido's "biometric software 'extract[s] and compare[s] numerical biometric data from facial images to understand whether two faces are likely to be a match'"). The Illinois legislature expressly excluded both photographs and information derived from photographs from BIPA's reach. Because Onfido only collects photographs and information derived therefrom, Onfido is outside the scope of BIPA, and Plaintiff's claim must be dismissed pursuant to Rule 12(b)(6).

5

IV. **Plaintiff Does Not State A Claim For $5,000 In Liquidated Damages Because Plaintiff Does Not Plead Facts From Which To Reasonably Infer That Defendant Intentionally or Recklessly Violated BIPA.**

Even if Plaintiff has stated a claim for a violation of BIPA (he has not), Plaintiff's claim for $5,000 in liquidated damages for each violation must be dismissed because Plaintiff does not allege facts showing that Defendant "intentionally or recklessly" committed such alleged violation. 740 ILCS 14/20.

The Illinois Supreme Court holds that "tort intent means a desire to cause consequences or at least a substantially certain belief that the consequences will result." *Ziarko v. Soo Line R. Co.*, 161 Ill. 2d 267, 272–73 (Ill. 1994) (internal quotation and alteration marks omitted). Furthermore, "reckless conduct which will support a cause of action…is conduct from which the actor knows [injury] is certain or substantially certain to result" or "situations in which there is a high degree of probability that [injury] will follow and the actor goes ahead in conscious disregard of it." *Pub. Fin. Corp. v. Davis*, 66 Ill. 2d 85, 90 (1976) (affirming dismissal of tort claims as inadequately pled); *see also Plocar v. Dunkin' Donuts of Am., Inc.*, 103 Ill. App. 3d 740, 745-46 (1st Dist. 1981) (same); *Ziarko*, 161 Ill. 2d at 273 (equating "willful and wanton" conduct with "reckless" conduct and explaining it consists of "a failure, after knowledge of impending danger, to exercise ordinary care to prevent the danger, or a failure to discover the danger through carelessness when it could have been discovery by the exercise of ordinary care") (internal quotation and alteration marks omitted).

Significantly, "[a] mere statement that an act was done with a certain purpose or intent, without a statement of facts showing such purpose or intent, is a conclusion of law" and is not sufficient to state a claim for intentional or reckless conduct. *Tobolt v. Allstate Ins. Co.*, 75 Ill. App. 3d 57, 63 (1st Dist. 1979). *Tobolt*, like this case, involved a complaint that repeatedly characterized the defendant's actions as "willful, wanton, malicious, reckless and intentional," but

6

did not include any factual allegations supporting that characterization. *Id.* at 66-68. The court dismissed claims as inadequately pled, holding "[t]he allegations that defendant's acts were willful, wanton, malicious, reckless, intentional or in bad faith are not factual allegations; nor are they supported by factual allegations." *Id.* at 71; *see also Mijatovich v. Columbia Sav. & Loan Ass'n*, 168 Ill. App. 3d 313, 316 (1st Dist. 1988) ("mere addition of phrases such as 'willful and wanton,' or similar terms, is not sufficient to allege reckless conduct…."); *Neuberg v. Michael Reese Hosp. & Med. Ctr.*, 60 Ill. App. 3d 679, 684–85 (1st Dist. 1978) ("merely adding that such actions were done 'willfully, wantonly, and with a reckless disregard for the health, well-being and safety of plaintiffs…cannot take the place of a clear statement that defendants committed the alleged acts with the intention of inflicting severe emotional distress upon plaintiffs"). Indeed, in another BIPA case, this Court dismissed plaintiff's complaint which pled in a similarly conclusory fashion that defendant's "violations of BIPA . . . were knowing and willful," finding that the allegations were insufficient to allow the court to infer that defendant acted intentionally or recklessly. *Rogers v. CSX Intermodal Terminals, Inc.*, 409 F.Supp.3d 612, 618-19 (N.D. Ill. 2019) (Aspen, J.).

Cases holding that plaintiffs failed to adequately plead "willful," "reckless," or "intentional" violations under federal statutes likewise abound. *See, e.g., Komorowski v. All-American Indoor Sports, Inc.*, No. 13-2177, 2013 WL 4766800, at *3 (D. Kan. Sept. 4, 2013) ("Merely alleging that a defendant should be aware of a statute and fails to comply with it…is insufficient to state a claim for willfulness."); *Vidoni v. Acadia Corp.*, No. 11-cv-00448, 2012 WL 1565128, at *4 (D. Me. Apr. 27, 2012) ("Merely being aware of a statute, then, is insufficient to state a claim for willfulness. In cases where the Defendant is aware of a statute's requirements, the Plaintiff must also allege that there was something more than a negligent violation, i.e., a

7

voluntary, deliberate or intentional violation."); *Sea v. CCCJV Am. Holdings, Inc*., No. CV 11-05031, 2011 WL 4946507, at *2 (C.D. Cal. Oct. 18, 2011) (holding that mere allegations of facts showing that information about a statute was available to defendant did nothing to support "naked assertion" that defendant was notified of statute's provisions and knowingly ignored them); *Huggins v. SpaClinic, LLC,* No. 09 C 2677, 2010 WL 963924, at *2 (N.D. Ill. Mar. 11, 2010) (granting motion to dismiss because allegations that statute was well-publicized and known in the industry "are not specific to the defendant" and "do not permit the inference that [defendant]'s conduct was anything more than negligent").

Here, the plain language of BIPA expressly states that photographs and information derived from photographs are not covered by BIPA. 740 ILCS 14/10 ("biometric identifiers do not include … photographs…"; "Biometric information" is "any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual."; "Biometric information does not include information derived from items or procedures excluded under the definition of biometric identifiers.") Plaintiff does not include any factual allegations in his Complaint supporting the conclusory assertions that Defendant intentionally or recklessly violated BIPA, much less in light of BIPA's plain language expressly carving out "photographs." Accordingly, Plaintiff's claim for $5,000 in liquidated damages per violation pursuant to 740 ILCS 14/20(2) should be dismissed.

**V.  Plaintiff Does Not State A Claim For $1,000 In Liquidated Damages Because Plaintiff Does Not Plead Facts From Which To Reasonably Infer That Defendant Negligently Violated BIPA.**

To support a claim for a negligent violation of BIPA, Plaintiff must allege facts showing the "existence of a duty owed by the defendant to the plaintiff, a breach of that duty, and injury proximately resulting from the breach*." Bruns v. City of Centralia*, 2014 IL 116998, ¶ 12. A plaintiff cannot plead a negligence claim if no duty existed, and a duty only exists to act as a

8

reasonably prudent person. *Id.* at ¶ 14. "Duties can arise from common law, statute, ordinance, or regulation." *Chiriboga v. Nat'l R.R. Passenger Corp.*, 687 F. Supp. 2d 764, 768 (N.D. Ill. 2009). Here, the duties that Plaintiff alleges Onfido was required to follow but did not arise from statute, *i.e.*, from BIPA.

Regardless of whether Plaintiff's actions of "uploading a photograph of his driver's license and a photograph of his face" imposed duties upon Onfido under BIPA, Plaintiff has not alleged facts showing that it was unreasonable to assume that photographs and information derived from photographs were not covered by BIPA. The plain language of BIPA states that "**biometric identifiers do not include … photographs**…" and that, for information to be covered "biometric information," it must be "**based on an individual's biometric identifier.**" 740 ILCS 14/10 (emphasis added). Additionally, the BIPA expressly states that "**[b]iometric information does not include information derived from items or procedures excluded under the definition of biometric identifiers**." *Id.* (emphasis added).

Because BIPA specifies that a biometric identifier does not include photographs, it is reasonable as a matter of law for Onfido to conclude that any information derived from photographs does not constitute biometric information. Therefore, Plaintiff's claim for any negligent violation of BIPA fails to state a claim upon which relief can be granted.

VI. **BIPA Violates The First Amendment.**

    a. **BIPA Is An Unconstitutional Restraint on Commercial Speech.**

"[I]nformation is not in itself harmful...." *Sorrell v. IMS Health, Inc.*, 564 U.S. 552, 578 (2011) (internal quotation marks omitted). "Facts, after all, are the beginning point for much of the speech that is most essential to advance human knowledge and to conduct human affairs." *Id.* at 570. Restrictions on access to information in private hands, such as customer data, violate the First Amendment. *Id.* at 576; *see also U.S. West, Inc. v. FCC*, 182 F.3d 1224 (10th Cir. 1999)

9

(invalidating law that restricted use of customer information for marketing purposes). In *IMS Health*, the Supreme Court held a state statute restricting pharmacies from selling retained information about drug prescribing habits violated the First Amendment. Specifically, the Court explained that:

> …Vermont has imposed a restriction on access to information in private hands….[W]e do have 'a case in which the government is prohibiting a speaker from conveying information that the speaker already possesses.' The difference [between that and government information] is significant. An individual's right to speak is implicated when information he or she possesses is subjected to 'restraints on the way in which the information might be used' or disseminated.

*IMS Health*, 564 U.S. at 568.

In *U.S. West*, the Tenth Circuit held an FCC regulation violated the First Amendment where it restricted telecommunication carriers from using customer information "'made available to the carrier by the customer solely by virtue of the carrier-customer relationship.'" *U.S. West*, 182 F.3d at 1228 n.1. The FCC contended the regulation did not affect "speech" because it only regulated use of data. *Id.* at 1232. The court rejected this argument and held the regulation did restrict speech because it made speech more difficult by limiting the ability of carriers to target their speech to a particular audience. *Id.*

Like the information at issue in *IMS Health* and *U.S. West*, the information at issue here—factual information voluntarily provided by consumers to identify themselves as marketplace users—is commercial speech.[2] As such, any restriction on that speech must meet three conditions

---

[2] BIPA is also a speaker-based restriction on speech because it explicitly does not apply to certain groups of people. In particular, BIPA exempts "a financial institution or an affiliate of a financial institution that is subject to Title V of the federal Gramm-Leach-Bliley Act" and "a contractor, subcontractor, or agent of a State agency or local unit of government when working for that State agency or local unit of government." 740 ILCS 14/25. In other words, BIPA regulates speech differently based on the identity of the speaker. Under *Sorrell*, speaker-based restrictions are likewise subject to heightened scrutiny. *Sorrell*, 564 U.S. at 569-70.

in order to survive: (1) the government must have a "substantial interest" in regulating the speech, (2) the regulation must directly and materially advance that interest, and (3) the regulation must be "no[] more extensive than is necessary to serve that interest." *Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 566 (1980*); see also People v. Sequoia Books, Inc.*, 127 Ill. 2d 271, 281 (1989) (same).

BIPA does not meet any of these conditions. First, the government has no "substantial interest" in restricting the collection, handling, or disclosure of facial geometry. The Supreme Court has held that a person has no reasonable expectation of privacy in his or her "physical characteristics" that "are constantly exposed to the public." *United States v. Dionisio*, 410 U.S. 1, 14 (1973). Person's faces are physical characteristics constantly exposed to the public. *Cupp v. Murphy,* 412 U.S. 291, 295 (1973). *See also United States v. Emmett*, 321 F.3d 669, 672 (7th Cir. 2003) ("[W]e think it clear that a person has no expectation of privacy in a photograph of his face."). Indeed, people show their faces throughout the day every day. Therefore, once "truthful information [is] 'publicly revealed' or 'in the public domain,' a court may not constitutionally restrain its dissemination." *Smith v. Daily Mail Pub. Co*., 443 U.S. 97, 103 (1979).

Second, even if the government were deemed to have a "substantial" interest in preventing the collection, handling, or disclosure of information, requiring a company to "develop a written policy, made available to the public," to provide disclosures "in writing," and to obtain "a written release" does not directly and materially advance that interest. *See* 740 ILCS 14/1 *et seq*.

Plaintiff admits that he voluntarily provided his photo and driver's license and subsequently uploaded his photo and driver's license to increase his own reputation and trustworthiness on the online marketplace. (Compl. ¶¶ 33, 35.) Plaintiff understood that his photograph would be used to "register [his] identit[y]" and would be stored because he

11

"established his identity through the online marketplace's mobile application by uploading a photograph of his driver's license and a photograph of his face." (*Id*.) There are no allegations that his photographs were disclosed or used in any manner other than the one for which he voluntarily provided them. BIPA's requirement that disclosures be made and releases obtained "in writing" does not materially advance any interest because—as this case illustrates—others forms of disclosure and consent are equally effective.

For the same reasons, BIPA's requirements are far "more extensive than necessary to serve that interest" of preventing identity theft. As the Sixth Circuit noted in *Daniel v. Cantrell*:

> Just because Congress' goal was to prevent the disclosure of private information, does not mean that Congress intended the implementation of every conceivable method of preventing disclosures. Printing all personal information in hieroglyphics instead of English would also help prevent the disclosure of such information.

375 F.3d 377, 383-384 (6th Cir. 2004). Converting the information to "hieroglyphics" would also protect it but would be more extensive than necessary. *Id.* at 384. Prohibiting companies from collecting and using factual identifying information without making certain disclosures and obtaining written consent is even more extensive, because it restricts companies from engaging in wholly permissible activities. *See id.; see also, e.g., State v. Madrigal*, 241 Ill. 2d 463, 473 (2011) ("what is wrongful is not the gathering of such information by using a person's name or address, but rather gathering or using such information for the purpose of committing identity theft."). Because Plaintiff's claim is premised on BIPA, which is unconstitutional, the Complaint must be dismissed in its entirety.

      **b.**    **Alternatively, BIPA Is A Content-Based Restriction Subject To Strict Scrutiny.**

Alternatively, BIPA is a content-based restriction on speech because it targets only certain categories of information that can be used to identify a person. *See* 740 ILCS 14/10; *Reed v. Town*

12

*of Gilbert*, 576 U.S. 155, 163 (2015) (content-based statute is one which "target[s] speech based on its communicative content"). Such content-based regulations "are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Nat'l Inst. of Family & Life Advocates v. Becerra*, 138 S. Ct. 2361, 2371 (2018) (internal quotation marks omitted).

BIPA cannot meet this standard for the same reasons it cannot survive heightened scrutiny. As explained above, a person has no reasonable expectation of privacy in his or her facial geometry, which is simply a physical characteristic that is constantly exposed to the public. *Supra* § VI(a). The government consequently has no compelling interest in regulating the collection, use, and storage of such information. Moreover, even if the government did have an interest in regulating this information, BIPA is certainly not narrowly tailored. There is no need for the statute to require that disclosures be made and releases obtained "in writing" when other forms of disclosure and consent are equally effective. *Supra* § VI(a). Indeed, Plaintiff explicitly alleges that he knowingly and voluntarily provided "a photograph of his driver's license and a photograph of his face." (Compl. ¶ 35.) In other words, he voluntarily relinquished any right to control that information. *See Smith v. Maryland*, 442 U.S. 735, 743-44 (1979) ("This Court consistently has held that a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties."); *United States v. Caira*, 833 F.3d 803, 806 (7th Cir. 2016) (no expectation of privacy in information disclosed to third parties).

## CONCLUSION

WHEREFORE, Defendant Onfido, Inc. respectfully requests that this Court dismiss Plaintiff's Complaint with prejudice and for any other relief as the court deems just.

Date: September 15, 2021	Respectfully submitted,

/s/Bonnie Keane DelGobbo
Bonnie Keane DelGobbo
Amy L. Lenz
**BAKER & HOSTETLER LLP**
One N. Wacker Dr., Suite 4500
Chicago, IL 60606
Telephone: (312) 416-6200
Facsimile: (312) 416-6201
bdelgobbo@bakerlaw.com
alenz@bakerlaw.com

Joel Griswold
**BAKER & HOSTETLER LLP**
200 S. Orange Ave., Suite 2300
Orlando, FL 32801-3432
Telephone: (407) 649-4088
jcgriswold@bakerlaw.com

*Attorneys for Defendant Onfido, Inc*

**CERTIFICATE OF SERVICE**

      I hereby certify that on September 15, 2021, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all Counsel of Record. Parties may access this filing through the Court's system.

                                              */s/*  Bonnie Keane DelGobbo