IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| FREDY SOSA and ROHITH AMRUTHUR, individually and on behalf of all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>ONFIDO, INC., a Delaware corporation,<br><br>*Defendant*. | Case No.: 20-cv-04247<br><br>Honorable Marvin E. Aspen |

**PLAINTIFFS' SUPPLEMENTAL MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT AGREEMENT**

Plaintiffs Fredy Sosa and Rohith Amruthur ("Plaintiffs") provide the following information pursuant to the Court's March 21, 2023 Order (dkt. 68) and attached the Parties' proposed Amended Class Action Settlement Agreement ("Amended Agreement") as Exhibit 1. For the Court's convenience, Plaintiffs have also attached a redlined version of the proposed Amended Agreement as Exhibit 2 and have submitted an amended Proposed Order to the Court's dedicated email. This Supplemental Motion answers the questions the Court previously posed, in order.

1.  **Onfido Does Not Oppose:** Defendant has confirmed to Plaintiffs' counsel that it does not oppose Plaintiffs' motion for preliminary approval (dkt. 67) or this supplement.

2.  **Exhibit "I":** The reference to "Exhibit I" in Paragraph 2.4(a)(ii) was included in an earlier version of the settlement agreement—the Parties exchanged 14 redlined drafts of the settlement agreement—and was inadvertently left in the final agreement. The Parties agree that this stray reference to "Exhibit I" did not affect the original Settlement Agreement in any material way and they have removed it from the attached proposed Amended Agreement.

1

3. **The Released Claims:** The Parties respectfully submit that the original definition of Released Claims was of an appropriate scope—indeed, it was narrower than or identical to the scope of the released claims in numerous other BIPA class action settlements approved by courts in this District, which extend to biometrics of each possible type arising from the defendant's course of conduct in the case. *E.g.*, *Marsh et al. v. CSL Plasma Inc.*, No. 19-cv-07606, dkt. 125-1 at 9–10 (N.D. Ill. Nov. 16, 2022); *Thome v. NOVAtime Tech., Inc.*, No. 19-cv-06256, dkt. 84-1 at 10–11 (N.D. Ill. Feb. 25, 2021); *Abudayyeh v. Envoy Air, Inc.*, No. 21-cv-00142, dkt. 80-1 at 6 (N.D. Ill. Sept. 16, 2022); *Quarles v. Pret A Manger (USA) Ltd*, No. 20-cv-07179, dkt. 44-1 at 11–13 (N.D. Ill. Apr. 18, 2022); *Bedford v. Lifespace Cmtys, Inc.*, No. 20-cv-04574, dkt. 23-1 at 4 (N.D. Ill. Feb. 1, 2021); *Bryant v. Loews Chi. Hotel, Inc., et. al.*, No. 19-cv-3195, dkt. 69-1 at 4–5 (N.D. Ill. Jul. 31, 2020); *Dixon v. Washington & Jane Smith Cmty.-Beverly*, No. 17-cv-08033, dkt. 97-1 at 5–7 (N.D. Ill. Aug. 12, 2019); *Williams et al. v. Personalizationmall.com, LLC*, No. 20-cv-00025, dkt. 100-1 at 9–10 (N.D. Ill. Jul. 6, 2022); *Vaughan v. Biomat USA, Inc. et al.*, No. 20-cv-04241, dkt. 100-1 at 8–9 (N.D. Ill. Feb. 9, 2023) (preliminarily approved). That release was appropriate to release all biometric-based claims arising from Onfido's practice of verifying identities, which is the course of conduct at issue in the Complaint, in exchange for the substantial monetary relief provided to the Settlement Classes. *See In re Brand Name Prescription Drugs Antitrust Litig.*, No. 94 C 897, 1996 WL 167347, at *2 (N.D. Ill. Apr. 4, 1996) (explaining that if the objectors were correct that "a class release can be no broader than the scope of issue[,] . . . rather than finding repose in settlements, settling defendants would face new and widespread litigation based on the same course of conduct[;] [u]nder such circumstances, settlement negotiations would simply not ensue"). As set forth below, however,

the Parties have significantly narrowed the definition of "Released Claims" in the proposed Amended Agreement.

First, the definition narrows "biometric identifiers" to a narrower category of biometric identifiers that Onfido's alleged course of conduct in verifying identities plausibly puts at issue. Plaintiffs alleged at the outset that Onfido collected scans of their faces. And based on the close-up photos of the class members' faces provided to Onfido for identity verification, there is an outside argument that a scan of a person's entire face includes a scan of their retinas or irises, too. That argument is also appropriately put to rest in exchange for the relief provided. *See id.* at *2. Onfido also provides an option to submit a short video instead of a photo for identity verification. Again, it is remotely possible that because there is audio included with the video, another plaintiff might conclude Onfido had collected a voiceprint. Such claims would be based on the same predicate that Onfido violated BIPA in providing identity verification, and is appropriately released in exchange for the settlement relief.

Second, the proposed amended definition releases only claims that arise from or relate to the above-mentioned biometric identifiers and biometric information if they were "derived from a photo or video" submitted to Onfido or Released Parties. The original release extended to biometric identifiers or biometric information derived from any other "information" that might have been submitted to Onfido or Released Parties. (The Parties are not aware of any information that would produce any other identifiers, but for the avoidance of doubt have narrowed this piece as well.)

The Parties did not, however, amend the released "actions" identified by the Court (selling, profiting from, disclosing, and redisclosing biometric identifiers and biometric information) in the proposed Amended Agreement. True, Plaintiffs did not allege in the

3

Complaint that Onfido did any of these things in violation of BIPA. But because the statute is relatively nascent, these terms haven't been interpreted in the context of the facts alleged here. *See Norberg v. Shutterfly, Inc.*, 152 F. Supp. 3d 1103, 1106 (N.D. Ill. 2015) ("The BIPA was enacted in 2008, and to this date, the Court is unaware of any judicial interpretation of the statute."). Take "selling" and "profiting," for example. Customers pay Onfido for identity verification services, and Onfido allegedly sends customers confidence scores which are "generated … based on the similarity of the faces." (Dkt. 64 ¶¶ 23, 25.) *See Vance v. Microsoft Corp.*, 534 F. Supp. 3d 1301, 1307 (W.D. Wash. 2021) (interpreting "otherwise profit" in Section 15(c) of BIPA in a different factual context). Whether that constitutes "selling" or "profiting from" biometric information is an open question. The meaning of "disclosure" and "redisclosure" in this context is an open question, too. Onfido provides confidence scores back to its customers, which could theoretically constitute a BIPA violation. In light of the unresolved questions as to the "action terms" in BIPA, Onfido negotiated for relief that extends to all possible "actions" extending from its identity verification services, which Plaintiffs agreed to in exchange for substantial monetary relief. Those actions are properly included in the release. *Smith v. Sprint Commc'ns Co. L.P.*, 2003 WL 103010, at *2 (N.D. Ill. Jan. 10, 2003) ("In the Seventh Circuit, the negotiation of a class settlement may properly result in a broadly drafted release."); *Oswald v. McGarr,* 620 F.2d 1190, 1198 (7th Cir. 1980) ("[I]t is entirely proper … to include a release for claims not yet adjudicated. A settlement offer is a compromise and may include release of claims not before the court.").

    4.    **Exclusion of Class Members who Signed a Written Release:** The Court questioned why the direct notices do not explain that an individual who executed a written release or consent form before their alleged biometric data was collected, as described in the

Settlement Agreement, is not a member of the Settlement Classes. (Dkt. 68 ¶ 4.) This exclusion is not explicitly referenced in the direct notices because every person who will be sent direct notice is on the Class List, and that list does not contain persons who signed such written releases. Proposed Class Counsel believe that including an explicit reference to the written release exclusion on the direct notice could confuse people who are included in the Settlement Classes (because they will not have executed a release, but may not recall whether or not they did).

However, in the proposed Amended Agreement, the Parties have included a reference to the exclusions to the classes in the direct notices, referred class members to the Internet notice, and updated the Internet notice to explain this exclusion in Question 4. (*See* Am. Agreement Exs. C–G.)

5. **Reference to "Selfies:"** The Court asked Plaintiffs to explain why the direct notices refer to an uploaded "selfie and photo ID" in describing the class definitions while the Settlement Agreement and Proposed Order instead refer to an uploaded "photograph and ID." The reason was to describe the Settlement in terms that the average class member would understand, *see* Fed. R. Civ. P. 23(c)(2)(B)—"selfie" is commonly used among app users to refer to a picture of oneself, but is likely too informal for a class definition. For purposes of this case and settlement, the use of "selfie" versus "photograph" and "photo ID" versus "ID" were viewed by the Parties as distinctions without a meaningful difference. First, Onfido likely wouldn't be able to determine whether a class member took a selfie or had someone else take a picture of them (nor would it matter for purposes of a BIPA violation). Second, if a user tried to upload a photo-less ID, it would be rejected, as Onfido would have no second picture of a face to compare against for identity verification. Nonetheless, the Court makes an astute observation, and

accordingly, the Parties have amended the class definitions to include those who uploaded "a photo or video of oneself and a photo ID" and have amended the proposed notice documents accordingly. (*See* Am. Agreement ¶¶ 1.17, 1.23.)

6. **Instructions for Objections and Exclusions:** The Parties have edited the direct notices to inform class members that there are requirements and instructions for objecting to or seeking exclusion from the settlement which can be viewed on the Internet notice (at Questions 13 and 16) available on the Settlement Website. (*See* Am. Agreement Exs. C–F.)

7. **Payment Ranges:** The Parties have edited the direct notices and Internet notice to include the estimated range of total individual payments—between $210 and $350 for NFI Class Members who submit an Approved NFI Class Claim, and between $65 and $110 for FI Class Members who submit an Approved FI Class Claim. (*See* Am. Agreement Exs. C–G.) These estimates assume (1) a claims rate between 15% and 25% for each class, (2) total Settlement Administration Expenses of $1,462,150.00,[1] (3) an incentive award of $5,000 for each Class Representative, and (4) an award of attorneys' fees and costs of 33% of each net settlement fund (that is, after all Settlement Administration Expenses and the incentive awards are deducted) of $8,919,190.50. These calculations are shown in the chart below:

---

[1] The exact amount of Settlement Administration Expenses that will be apportioned to each class is unknown at this early stage. As set forth in the original and proposed Amended Agreement, expenses incurred on behalf of both Settlement Classes will be paid equally from the FI Class Settlement Fund and NFI Class Settlement Fund, and expenses incurred on behalf of only one settlement class will be paid only from that settlement class's settlement fund. (Am. Agreement ¶ 1.35.) The current estimates in the chart above are estimates based on the relative sizes of the Settlement Classes.

|  | NFI Class | FI Class | Total |
|---|---|---|---|
| Gross Settlement Fund | $15,714,404.10 | $12,785,595.90 | $28,500,000.00 |
| Estimated Class Size | 194,954 | 475,857 | 670,811 |
| Estimated Settlement Administration Expenses | $424,936.37 | $1,037,213.63 | $1,462,150.00 |
| Estimated Incentive Awards | $5,000.00 | $5,000.00 | $10,000.00 |
| Estimated Percentage Fee Award | 33.00% | 33.00% |  |
| Estimated Fee Award | $5,043,874.35 | $3,875,316.15 | $8,919,190.50 |
| Net Settlement Fund | $10,240,593.38 | $7,868,066.12 | $18,108,659.50 |
| Number of Claimants @ 15% Claims Rate | 29,243 | 71,379 |  |
| Number of Claimants @ 25% Claims Rate | 48,739 | 118,964 |  |
| Payment Amount @ 15% Claims Rate | **$350.19** | **$110.23** |  |
| Payment Amount @ 25% Claims Rate | **$210.11** | **$66.14** |  |

8. **The Settlement Website:** The email notices have been edited to state that: "the Settlement Website [] is www.OnfidoBIPASettlement.com." (Am. Agreement Exs. C, E.)

9. **Defense Counsel's Address**: The Parties have edited Defendant's Counsel's address in the Internet notice to be consistent with the proposed Amended Agreement and Proposed Order—all now list Baker & Hostetler's office in Orlando, Florida. (Am. Agreement, Ex. G, ¶ 16.) The Internet notice previously listed Baker & Hostetler's local office in Chicago as it is an Illinois-based class. If any class member sends their objection to the Chicago office address, it will still reach Defendant's Counsel.

10. **Payments Over Time**: The Parties have edited the Internet notice to clarify that settlement payments will be distributed over three years, not four. (Am. Agreement, Ex. G, ¶¶ 5, 7.) This is now consistent with the language in the Amended Agreement. (Am. Agreement ¶ 2.1(c)–(d).)

11. **Filing Objections:** The Parties have edited the Internet notice to explain that all counseled objections and other filings must be e-filed via CM/ECF and that all *pro se* objections must be delivered to the Clerk of the Court. (Am. Agreement, Ex. G, ¶ 16.) However, per the Northern District's Seventh Amended General Order 21-0027 (February 15, 2023), Chief Judge

Pallmeyer has authorized *pro se* litigants to submit filings via the Clerk's Office's Pro Se Filer Submission webpage, https://www.ilnd.uscourts.gov/Pages.aspx?page=SubmitProSePDF. The Parties are happy to include this option in the Internet notice if the Court so instructs.

12. **Proposed Order Dates**: Finally, the Parties have "define[d] all necessary dates in [the] Proposed Order based on the number of days following entry of the preliminary approval order." (Dkt. 68 at 5–6.) The suggested dates and deadlines (i.e., the Claims Deadline, Objection/Exclusion Deadline, and Final Approval Hearing) are set later than usual to allow the Parties sufficient time compile the Class List before the Notice Date, which will require Plaintiffs to subpoena at least four Onfido customers who refused to voluntarily provide class member contact information. (Am. Agreement ¶ 4.1(b).) Specifically, the Parties have built into the schedule an additional three (3) months before the Notice Date to allow for Plaintiffs' subpoenas, the customers' responses, and the filing of and ruling on any necessary motions to compel.

13. Unless the Court has any further comments or suggestions, the Parties will promptly execute the proposed Amended Agreement.

                                            Respectfully submitted,

                                            **FREDY SOSA** and **ROHITH AMRUTHUR**, individually and on behalf of all others similarly situated,

Dated: April 20, 2023                  By: /s/ Schuyler Ufkes
                                                    One of Plaintiffs' Attorneys

                                            J. Eli Wade-Scott
                                            ewadescott@edelson.com
                                            Schuyler Ufkes
                                            sufkes@edelson.com
                                            EDELSON PC
                                            350 North LaSalle Street, 14th Floor
                                            Chicago, Illinois 60654

                                    Tel: 312.589.6370
                                    Fax: 312.589.6378